**73 So.2d 806**

### STATE v. DI VINCENTI.

No. 41672.

May 31, 1954.

Salvador Anzelmo, John F. Fox, Jr., John J. Maxwell, New Orleans, for appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Severn T. Darden, Dist. Atty., Peter J. Compagno, Asst. Dist. Atty., George J. Gulotta, Executive Asst. Dist. Atty., New Orleans, for appellee.

HAMITER, Justice.

Convicted of the offense of simple burglary, and sentenced to a term of nine years in the state penitentiary, Joseph Di Vincenti brought this appeal. When the cause came on for a hearing in this court it was submitted on briefs without oral argument.

In the brief filed on behalf of appellant, his counsel direct our attention to and they discuss only eighteen of the originally reserved fifty-five bills of exceptions (the undiscussed thirty-seven bills are treated as having been abandoned and are not considered); and, in aid of the discussion, counsel

furnished a short statement relating to the alleged offense.

To quote the mentioned statement: "Briefly the facts as reflected in the record began with a showing that on Saturday, December 4, 1948 the Home Finance Company, located at 1705 Dryades Street, was entered and a safe was removed from the premises; that the safe removed bore the serial number 50193 and had been taken from the said place of business through the front door.

"Thereafter in April of 1953 Sheriff John J. Grosch sent two deputy criminal sheriffs to Angola Penitentiary where appellant was serving time on another offense. The appellant made an alleged oral statement to the said deputy sheriffs on April 2, 1953. Four days later on April 6, 1953 the same deputies returned to see appellant at Angola and obtained from the appellant an alleged written confession involving himself, 'Joe Chaellia, Adolph Malfier and Sal McCasey' in a robbery on a finance company 'on Dryades Street'.

"On the following night April 7th of 1953 while appellant was being taken to New Orleans by automobile from Angola with Deputy Sheriff William Grosch and others, appellant allegedly made another oral confession with respect to the burglary of the Home Finance Company.

"While in the Parish Prison in New Orleans appellant was placed in a cell with Mike Roach, another inmate of the Parish

Prison. A tape recording was made of conversation between appellant and Roach from July 7th through July 10, 1953."

■ Bill of exceptions Number 2 is first discussed. It was reserved to the court's denial of a subpoena duces tecum to compel the production of police car mileage and beat roll books for the month of December, 1948, both of which were records in the possession of the New Orleans Police Department. According to the application for the writ, as well as to the brief of defense counsel, the records were desired for the purpose of proving that Police Officers Adolph Mayerhafer and Salvadore Marchese, whom the appellant had implicated in his several alleged confessions as co-perpetrators of the offense, could not possibly have participated in the commission of the crime. If the records had been obtained and introduced the proof thereby made would not have benefited this defendant who alone was on trial. Therefore, they were irrelevant, and the ruling complained of was correct.

■ For his convenience in the arrangement of the state's case the district attorney had prepared a written transcript of the above mentioned tape recorded conversations occurring between appellant and Mike Roach from July 7, 1953 through July 10, 1953. Appellant and his attorneys, on a prayer for oyer and in advance of the trial, were permitted to listen to the entire recordings; but the trial judge refused to order

the district attorney to furnish to the defendant a copy of the written transcript that he had prepared, and to such refusal bill of exceptions Number 3 was taken. The bill is without merit. The prepared transcript did not constitute a written confession of which, under recent decisions of this court, the defendant was entitled to a pretrial view; it amounted to no more than notes or memoranda (made for the use of the district attorney) which merely recited some of the contents of the real confessions. To the latter the defendant was granted access, and from the recordings thereof he could have made his own written transcript had he desired.

■ Bills of exceptions 5 and 6 are considered together since they concern the same subject matter. They were taken to the sustaining of the state's objections to the following questions propounded by defense counsel to prospective jurors: "Do you believe that there has been any collaboration between the police department and safe robbers in order to violate the law and commit a crime?" And "Do you have any preconceived notions, ideas or opinions concerning the alleged scandal involving the police and safe robbers?" The rulings, we think, were proper. The questions, general in nature, were irrelevant and could have no bearing on the qualifications of the prospective jurors for determining the guilt or innocence of the accused on trial.

■ While the defendant was under cross examination, having taken the stand following the state's efforts to lay a foundation for the introduction of his several confessions, he was questioned by the district attorney about conversations had with his cell mate Mike Roach in which he allegedly stated to Roach that a previous repudiation of his original confessions was done at the suggestion of others and that such confessions were true. To two of the questions defendant offered objections as being irrelevant; and, when they were overruled, he reserved bills of exceptions Numbers 9 and 10. Although having no direct bearing on the guilt or innocence of the accused, the questions were relevant and material for impeachment purposes, the appellant, while on the stand, having denied the truthfulness and validity of the confessions.

Bills of exceptions Numbers 11, 12 and 13 were taken to the offer and admission in evidence of the first oral confession made on April 2, 1953. As stated in the brief of defense counsel: "Whether or not this statement or confession was to be admitted into the evidence resolved itself into a question of credibility as to the state's witness Warden Burke and the appellant. Warden Burke had testified that no force or violence of any kind or character was applied to appellant and that no threats, promises or inducements were held out to him to make the statement he made.

"The appellant testified that he was offered money and other inducements on April 2, 1953 provided he did make such a statement. Appellant advised Warden Burke he would think it over, and the record reveals that Warden Burke returned on April 6, 1953 and then received the written statement of Joseph Di Vincenti."

In his per curiam respecting these bills (Numbers 11, 12 and 13) the trial judge stated: "I admitted the oral confession in evidence over the objection of counsel for the accused because and for the reason that I was of the opinion from the evidence submitted by both sides that the said confession was made freely and voluntarily. I believe the record will show that I am correct."

 Whether a sufficient basis has been laid for the admission of an alleged voluntary confession of the accused is primarily a question of fact; and the ruling of the trial judge thereon, reviewable by us, will not be disturbed unless it is manifestly erroneous. State v. Woods, 124 La. 738, 50 So. 671; State v. Mitchell, 168 La. 454, 122 So. 579; State v. Washington, 175 La. 738, 144 So. 437. From the evidence adduced in this cause, which has been carefully examined, we cannot conclude that manifest error was committed in the admission of the confession.

 Chief Deputy Sheriff William Grosch was offered as a state witness and on direct examination testified that the oral confession made by appellant to him on the night of April 8, 1953, while traveling from the state penitentiary to New Orleans, was freely and voluntarily given. On cross examination he was asked by defense counsel, "Isn't it true Mr. Grosch, as a result of a brutal beating administered to Charles Monaco, alias Charles Colombo, administered by you that the said Charles Monaco was refused admittance to the Twelfth Precinct?" The purpose of the inquiry, according to appellant's brief, was to test the credibility of the witness and to disclose a reason for defendant's experiencing fear when giving the confession. To the question the witness immediately answered: "I would say you were a liar." Thereupon, the state objected, the objection was sustained, and defense counsel reserved bill of exceptions Number 14. By the ruling the defendant was in no manner prejudiced; the witness had already answered the question, although perhaps not in the particular respect desired. Furthermore, the accused himself later testified that he was not intimidated or threatened while in Grosch's custody.

 On cross examination Chief Deputy Sheriff William Grosch was questioned, and he answered, as follows:

"Q. When you were investigating this case, with the knowledge that one of your brother police officer's name was mentioned, did you bother to check the car mileage book to find out who Mayerhafer and Marchese was work-

ing with December 4, 1948? A. That don't make no difference, they could change partners—"

The interrupting of the answer was by the judge, without any objection to the question from the state, he having announced:

"Mayerhafer and Marchese are not on trial. They are not seated here on any accused matter. The law says that it would be an unfair witness if something could be said about somebody not on trial. So why ask him whether he checked on Mayerhafer and Marchese. The Court instructs the witness not to answer the last question and has stated the reasons."

At the conclusion of the announcement bill of exceptions Number 15 was reserved. As pointed out hereinabove, in connection with our discussion of bill of exceptions Number 2, appellant alone was on trial; and evidence disclosing the activities of Mayerhafer and Marchese was irrelevant with respect to the matter of the guilt or innocence of this accused.

■ Bill of exceptions Number 24 was taken to the order in which the several reels of the tape recordings were played before and for the jury, and defense counsel argue here that the "most prejudicial reel" or "best reel" was played first on the instructions of a state witness. A reading of the per curiam of the trial judge clearly discloses that no prejudice resulted to appellant

from the order of the playing. It recites: "* * * The court session was transferred from the regular courtroom to one of the studios of the Radio Station W.D.S. U. The reason for said transfer was that the operator and equipment necessary to play the tape recordings were all contained in the room of the radio station and the acoustics and other settings were not adept in the regular courtroom. No one instructed the operator at the station to play any particular reel by any number and it was only after the first reel was played that counsel for the accused objected to the manner in which they were being played, insofar as which was first and so on. Upon being informed by counsel for the accused that he would prefer a certain way to play the records I immediately instructed the operator to play them accordingly. I cannot conceive of any harm being done the accused and I can't distinguish any legal point being involved in this instance."

■ Under bill of exceptions Number 26 defense counsel complain that the tape recordings made on July 7, 1953 were not produced and played for the jury as were those of July 8, 9 and 10, 1953, they invoking the principle of law that every confession sought to be employed against any one must be used in its entirety. The recordings, as shown by the record, were of different conversations that took place between appellant and Mike Roach on four separate days; and the recording machine was not in continuous operation during the

four-day period, it having been permitted to function only while each conversation was occurring. For these reasons it does not seem exactly correct to say that all of the conversations constituted a single confession. Then, too, the state explains that the first day's recordings were very poor and unsatisfactory due to mechanical difficulties, the machine and cables having just been installed, and its explanation is substantially supported by evidence. Moreover, defense counsel made no objection to a failure of the production when the other recordings were offered, they having objected for the first time on the filing of a motion for a new trial. As to the recordings for the remaining three days, which were introduced into evidence, they were played in their entirety for the jury's information and benefit. To quote from the court's per curiam: "I refused to expunge the testimony heard by way of the tape recordings at W.D.S.U. Radio Station for the reason that the recordings spoke for themselves and although could not be transcribed by the official stenographer because of their incoherence and lack of continuity, they were heard by the petty jury who were ordered by the court to treat and give them as much weight as they thought should be given. In other words by admitting the recordings in evidence I acted as I would have acted in a case of a written confession. The recordings having been identified I permitted the state to introduce them as evidence and ordered their playing as requested by the state. Insofar as the alleged irrelevant statements contained in the recordings it is the law of this state that the entire statement or statements made by an accused shall be given to the jury so I was compelled to have the jury hear the entire recordings in the case. Please see Revised Statute 15:450." Under the recited circumstances we are of the opinion that the bill has no merit.

While Mike Roach was under cross examination defense counsel propounded the following question: "How many times were you in the hole while you were held in the parish prison?" By "hole" was meant something similar to "solitary confinement". The state objected to it on the ground of immateriality, and the objection was sustained. To the ruling bill of exceptions Number 29 was reserved. The judge, in our opinion, ruled correctly.

Again, while Mike Roach was being cross examined he was asked: "When did you get out of the parish prison?" He replied that it was in July, but the exact date he did not remember for he had no calendar. Then in another question framed somewhat differently the same information was sought; and to it the court sustained an objection of the state on the ground that the witness had answered. In the ruling, to which bill of exceptions Number 30 was taken, there appears to have been no abuse of the judge's discretion.

Defense counsel complain, under bill of exceptions Number 48, of the court's

having excluded a letter written by Chief of Detectives Harry J. Daniels to the district attorney's office, they urging that it was offered for the purpose of showing that according to records of the police department certain parts of appellant's confessions were in fact untrue. In defense of the exclusion the judge states that the letter "had no bearing or effect with the present accused on trial in this particular case." We are unable to dispute this statement, the document not having been attached to and made a part of the bill.

In connection with bills of exceptions 54 and 55, taken to the overruling of motions for a new trial and in arrest of judgment, defense counsel make the argument (as we understand it) that the confessions did not have the corroboration necessary for a conviction. Thus, they say: "It is submitted that there was no corroboration whatsoever except testimony from state's witnesses from the Criminal Sheriff's office for the Parish of Orleans who as reflected by the record were very interested parties." This argument, which amounts to no more than a plea that the evidence was insufficient to convict the defendant, is unavailing here. As stated in the recent case of State v. Matassa, 222 La. 363, 62 So.2d 609, 614, " * * * It is elementary that in criminal cases this court cannot pass upon the sufficiency of the evidence. Where some evidence has been adduced upon which a verdict of guilty can be predicated (no matter how little), the question of its

sufficiency is exclusively for the jury's determination. * * *"

For the reasons assigned the conviction and sentence are affirmed.