109 So.2d 471 (1959)
236 La. 930
STATE of Louisiana
v.
Celestine MELERINE, James Licciardi, and Carlo P. Gioe.
No. 44318.
Supreme Court of Louisiana.
February 16, 1959.
Rehearing Denied March 23, 1959.
*474 F. Irvin Dymond, John P. Dowling, Russell J. Schonekas, George W. Reese, Jr., New Orleans, for defendants-appellants.
Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., L. H. Perez, Dist. Atty., L. H. Perez, Jr., 2nd Asst. Dist. Atty., New Orleans, August A. Nobile, Jr., Sp. Counsel, Chalmette, for appellee.
HAMLIN, Justice.
The defendants, Celestine Melerine, James Licciardi, and Carlo P. Gioe, were charged by bill of information with malfeasance in office,[1] a crime prohibited by LSA-R.S. 14:134. Carlo P. Gioe was not tried, the district attorney having moved for the severance of said Carlo P. Gioe from the trial and the trial court having granted the severance.
Appellants, Celestine Melerine and James Licciardi, were tried, found guilty, and each was sentenced on each count to serve three months in the parish jail and pay a fine of $500, in default of payment thereof to serve sixty additional days in the parish jail. They have appealed to this Court, presenting for our consideration twenty-two bills of exceptions.
Bill of Exceptions No. 1 was reserved to the refusal of the trial judge to grant defendants' motion to have the District Attorney, Leander H. Perez, recused on the ground that he had a personal interest adverse to that of the prosecution. Such personal interest, which was denied by the district attorney, was set forth as follows:
"1) That Leander H. Perez, District Attorney, had a personal interest, adverse to that of the prosecution herein.
"2) That he was a member of a law firm or partnership composed of said Leander H. Perez, Leander H. Perez, Jr., and Chalin O. Perez, engaged in the practice of law under the name of Leander H. Perez and Sons.
"3) That Leander H. Perez, Jr., a son and a law partner of said Leander H. Perez, was an Assistant District Attorney for the Parish of St. Bernard; that the defendants and their adherents controlled the policy making actions of the Police Jury of the Parish of St. Bernard by one vote; that said police jury was composed of members *475 of different factions, the Melerine-Licciardi faction being in the majority by one vote; that proceedings seeking the removal from office of said Celestine Melerine and James Licciardi had been instituted against them under the Nos. 6192 and 6193 of the docket of said court; that one of the grounds urged by plaintiff in said removal proceedings was identical to the charge in these proceedings; that, therefore, the outcome of the instant proceedings had a very important bearing upon said action for removal from office.
"4) That movers and Leander H. Perez belong to opposing political factions, and that the removal of movers from office would accrue to the political benefits as well as the financial benefits of said Leander H. Perez and members of his political faction.
"5) That when movers and their political faction came into power by obtaining a majority vote of the Police Jury of St. Bernard Parish, that body reduced the monthly salary of Leander H. Perez, Jr., from $200.00 per month to $62.50; that should movers be removed from office, such removal would create an opportunity for the restoration of the salary of Leander H. Perez, Jr., to the sum of $200.00 per month.
"6) That when movers came into power as aforesaid, said body ceased the payment of a salary of $225.00 per month to Miss Rose Church, secretary of said Leander H. Perez, Sr., causing said Perez to have to pay said secretary from another source; that the removal from office of movers would create an opportunity for the restoration of said salary to Miss Rose Church and would thus operate to the benefit of the said Leander H. Perez, Sr.
"7) That when movers came into power as aforesaid, said body ceased the payment of a salary of $350.00 per month to Anthony Licciardi, an investigator for the District Attorney, thus necessitating the payment of said salary by the said Perez from another source; that the removal of movers from office would create an opportunity for the restoration of said salary by the police jury to said Anthony Licciardi.
"8) That when movers came into power as aforesaid, said body ceased the payment of a salary to Rudolph McBride, an Assistant District Attorney, thus necessitating the payment of said salary from another source by said Perez."
The causes for recusation of a district attorney, as set forth in LSA-R.S. 15:310, are:
"(1) If said district attorney be related to the party accused or to the party injured within the fourth degree, or be his father-in-law, or his son-in-law, or his brother-in-law, or be the husband of the accused or of the party injured;
"(2) If said district attorney shall have been employed or consulted as attorney for the accused before his election or appointment as district attorney;
"(3) If said district attorney shall have a personal interest adverse to that of the prosecution."
The persons referred to in defendants' motion, supra, are not the parties accused. The evidence discussed in the trial judge's per curiam to the bill does not show that they have employed the district attorney as counsel or that they have asked that he intercede for them.
Leander H. Perez, Jr., Second Assistant District Attorney, testified that he, the district attorney, and Chalin O. Perez, were not engaged in the practice of law as a law firm or partnership.
*476 There is no allegation or showing that the district attorney would have to personally pay any part of the monthly salaries of the persons referred to in defendants' motion. The interest that a third person might have in keeping his job or that he will not suffer a reduction in pay is a personal interest, but it cannot be classed as an interest adverse to the prosecution. To say that an officer of the court, elected by the people, has an interest adverse to the prosecution because third parties will profit if the accused are removed from their positions or offices is mere speculation.
Article IX, Sec. 7, Louisiana Constitution of 1921, LSA, provides for the filling of such offices as are herein involved by the appointing power during the removal proceedings. The district attorney is therefore disassociated with the offices insofar as the appointment of successors is concerned.
The State sets forth in its brief that the suits for removal referred to by the defendants were filed by the district attorney in his official capacity and in the discharge of a mandatory duty provided by Article IX, Secs. 1, 6 and 7, of the Louisiana Constitution of 1921, which requires a district attorney, without pecuniary or personal reward, to file removal suits against parochial or ward officers when requested in writing by twenty-five citizens and taxpayers, and that the record in these removal cases (referring to Perez v. Licciardi, 236 La. 236, 107 So.2d 455, in which this Court acted upon an application for writs) show that more than the necessary amount of citizens and taxpayers requested the district attorney to institute the suits for removal. This is not contradicted.
We find no direct connection between the removal proceedings and the present prosecution. In Stanley v. Jones, 197 La. 627, 2 So.2d 45, 48, we stated:
"The next question requiring consideration is defendant's plea of prematurity, which is predicated on the contention that defendant has never been charged, placed on trial, or convicted in the criminal courts on any of the charges set out in the petition, a prerequisite for the institution of a suit for the removal from office. Defendant's brief does not contain any argument in support of the plea. For our own part, we do not find any merit in it."
The above statement means that removal proceedings and a criminal prosecution against the same defendants are not interdependent; the mere fact that the district attorney has filed suit for the removal of the defendants from office reflects no reason for recusing him in a criminal prosecution.
Defendants contend that the case of State v. Tate, 185 La. 1006, 171 So. 108, 112, has extended LSA-R.S. 15:310 so as to require recusation in cases where the district attorney has a personal interest in the conviction rather than a personal interest adverse to that of the prosecution.
In the Tate case, supra, the defendant urged as grounds for the recusation of the district attorney the fact that he had previously acted as counsel for various insurance companies in proceedings against the defendant for damages alleged to have resulted from the crime for which he was being prosecuted. In upholding the defendant's contention this Court stated:
"In conducting a criminal case the prosecuting attorney must be fair and impartial, and see that defendant is not deprived of any constitutional or statutory right, because he is a quasi judicial officer. 18 C.J. § 42, pp. 1315, 1316.
"This rule, founded on justice and fair dealing, we think is intended not only to restrain the offer of illegal evidence or the violation of the orderly rules of procedure by prosecuting officers, but also to require their recusation in those cases in which their interest, directly or indirectly, may be such as to cause them to sacrifice impartial justice to personal advantage.

*477 "The statutory requirement that the district attorney shall be recused where `he shall have a personal interest adverse to that of the prosecution' is broad enough to cover a case where he is of counsel in a civil action against the accused, based substantially on the same or on closely related facts."
The Tate case, supra, is not apposite. There the district attorney definitely had an interest adverse to the prosecution.
This Court, in State v. Henry, 200 La. 875, 9 So.2d 215, 217, interpreted Article 310 of the Code of Criminal Procedure, which is now incorporated in the Revised Statutes as R.S. 15:310, as follows:
"* * * A mere reading of the article will show that it means exactly what it says, i.e., that any district attorney (or assistant district attorney) who has, previous to his election or appointment, `been * * * consulted as attorney for the accused,' will be recused in the trial of the case. This clause does not say, nor can it be construed to mean, that the district attorney (or his assistant) will be recused because his employment was sought by someone on behalf of the accused prior to his election or appointment. It means that he will be recused if prior to his election or appointment he was consulted professionally with respect to the rights or defenses of the accused. We can think of no reason, and none has been pointed out to us, why the meaning of this codal article should be extended further. The reason for this rule of law is that it prevents a district attorney (or his assistant) from taking advantage of an accused by being placed in the position of having available for use against the accused information forming a part of the privileged communications existing between an attorney and his client that was imparted to him prior to his election or appointment. The other states that have passed on this point are in accord with this view. * * *"
In the instant case, it is self-evident that the accused never employed nor requested the services of the district attorney.
Defendants further contend that this Court, under the provisions of LSA-R.S. 15:422(6), should take judicial notice of the political conditions prevailing in St. Bernard Parish prior to the trial and at the time of the trial, as well as at the present time. In support of this contention, they urge that it is a well-known fact that the Parish of St. Bernard is a political hot-bed, and that the district attorney herein has lost control of the Police Jury. It is argued that this being the case the district attorney had a political advantage at stake in connection with the trial of the defendants.
Political conditions exist at all times where there is a democratic form of government, but we do not believe that the conditions alleged herein are of the type which would justify our taking special judicial notice.
This Court has consistently held that a district attorney may not be recused nor recuse himself on any ground other than one of those prescribed by law, because such grounds for recusation are limitative. State v. Boasberg, 124 La. 289, 50 So. 162; State v. Bryan, 175 La. 422, 143 So. 362; State v. Bussa, 176 La. 87, 145 So. 276.
For the reasons hereinabove assigned, there is no merit in Bill of Exceptions No. 1.
Bill of Exceptions No. 2 was reserved to the overruling of defendants' motion to quash. The motion averred that:
"1. * * * while your defendants are charged herein with the violation of R.S. 14:134, the alleged offense set forth in said Bill of Information is dependent upon for proof that the State prove that your defendants are guilty of the crime of public bribery, as defined in R.S. 14:118, which is a felony.

*478 "2. * * * inasmuch as the State must prove that your defendants are guilty of a felony in order to support a conviction of the charge herein, your defendants would be entitled and do desire a trial by jury for the purpose of determining whether they are guilty of the crime of public bribery.
"3. * * * inasmuch as the basic charge herein (malfeasance in office) is a misdemeanor, there is no authority in law for the trial of this case before a jury and thus your defendants are illegally deprived of a right which is granted to them by Article 7, Section 41, of the Louisiana Constitution of 1921."
The basic contention of counsel for the defendants is that the crime of malfeasance in office is implicit in every offense of public bribery committed by an officer in the discharge of his public duties, and that in the instant case it was necessary for the trial judge to find that the defendants were guilty of a felony before he could find them guilty of the misdemeanor herein charged. Employing this predicate, counsel argues that the defendants should have been charged with the crime of public bribery,[1] a felony, entitling them to a jury trial under Article VII, Sec. 41, Louisiana Constitution of 1921. It is urged that since the charge herein is a misdemeanor, triable by a judge, and since defendants are allegedly entitled to a jury trial, the information should be quashed.[2]
LSA-R.S. 14:134, malfeasance in office, provides:
"Malfeasance in office is committed when any public officer or public employee shall:
"(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
"(2) Intentionally perform any such duty in an unlawful manner; or
"(3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.
"Whoever commits the crime of malfeasance in office shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both."
For conviction under the above statute, it was necessary that the trial judge find that the defendants herein performed the duties required of them in an unlawful manner. While he did not find them guilty of the crime of public bribery, he found that they accepted the bribes set forth in the information, supra. Such a finding was certainly the conclusion that defendants performed their duties in an unlawful manner. Thus, finding one guilty of malfeasance in public office because he has accepted bribes does not find one guilty of the crime of public bribery where he has not been tried for such crime.
LSA-R.S. 15:17 states that "* * * the district attorney shall have entire charge and control of every criminal prosecution instituted or pending in any parish wherein he is district attorney, and shall determine whom, when, and how he shall prosecute; * * *" Under this statute, it was the prerogative of the district attorney to decide whether he would prosecute *479 under LSA-R.S. 14:134 or under LSA-R.S. 14:118. Having chosen the former, he had only to comply with its requirements. Defendants were not subject to the penalties of LSA-R.S. 14:118,[3] which are more severe than those of LSA-R.S. 14:134, supra, and, likewise, they were not entitled to the privilege of a trial by jury.
Substantiating our reasoning is the following excerpt from the trial judge's per curiam:
"A reading of L.S.A.-R.S. 14:134 shows that the essential ingredient to the crime of malfeasance under Paragraph (2), is the intentional performance, by a public officer of a duty, lawfully required of him, in an `unlawful manner.' This being so, it was necessary that the information describe the alleged conduct of defendants, and, state in what particulars, it would be contended, they had conducted themselves, so as to bring them within the statutory expression `unlawful manner.' Or, to put it in another way, the use by the pleader of the term `unlawful manner,' without describing in what respect the conduct of defendants constituted the performance by them of a duty lawfully required of them, would simply have been a conclusion of the pleader, and nothing more.
"Obviously, if the pleader had contented himself, with the use of the term `unlawful manner,' in describing the conduct of defendants, without particularizing in what respect this conduct constituted the performance of a duty lawfully required of defendants, he would have been met with a motion for a bill of particulars. Equally obvious, is the fact, that the court would have been compelled to grant same, and, in so doing, a compliance by the State would have furnished defendants the same information contained in the Bill of Information."
For the reasons assigned, there is no substance to Bill of Exceptions No. 2.
Bill of Exceptions No. 3 was taken to the overruling of defendants' plea of former jeopardy. Defendants averred in said plea that in Case No. 4632 of the Docket of the Twenty-Fifth Judicial District Court in and for the Parish of St. Bernard (State v. Melerine, 236 La. 881, 109 So.2d 454) wherein Celestine Melerine and James Licciardi were defendants, they had been charged and convicted of the same offense charged in the present bill of information. They contended that to try them under the present bill of information would twice put them in jeopardy of their liberty for the same offense, in violation of Section 9 of Article I of the Louisiana Constitution and the rights guaranteed them by Section I of the Fourteenth Amendment of the Constitution of the United States. Defendants prayed that their plea be tried by jury.
LSA-R.S. 15:279 provides:
"To constitute former jeopardy it is necessary, that the court in which the former trial took place had jurisdiction, and was legally constituted; that the former acquittal or conviction was rendered on a sufficient indictment; that the proceedings ending in the former acquittal or conviction were valid; that the former verdict rendered was responsive to some charge contained in the indictment and was of such form as to be the basis of a valid judgment; and that the offense formerly charged and that presently charged are either identical, or different grades of the same offense, or that the one is necessarily included in the other."
Although the present charge is that of malfeasance in office and the charge in case No. 4632, supra, is also malfeasance in office, the acts of malfeasance are distinctly *480 separate. In one instance, the defendants are charged with having accepted kickbacks on an oyster shell contract, while in the other they are charged with having demanded payment for their approval, as Members of the Board of Supervisors for Sewerage District No. 2, of the purchase of a contractor's inventory of unused materials and for an increase in prices for Work Order No. 2. The contracts were not executed on the same date; they were not continuous events; they did not involve the same contractors; and the defendants acted in different capacities when they committed each act of malfeasance charged.
Under the circumstances above outlined, defendants' plea of autrefois convict is without merit. They have suffered no deprivation of their constitutional rights. State v. Anderson, 135 La. 326, 65 So. 478; State v. Heard, 107 La. 60, 31 So. 384. See, also, State v. Sawyer, 220 La. 932, 57 So.2d 899; State v. Ysasi, 222 La. 902, 64 So.2d 213; State v. Yokum, 155 La. 846, 99 So. 621.
LSA-R.S. 15:282 prescribes that "Any plea of former jeopardy shall be triable by the judge without a jury." Defendants were, therefore, not entitled to a trial by jury of their plea of former jeopardy.
Bill of Exceptions No. 3 is without merit.
Bill of Exceptions No. 4 was reserved to the refusal of the trial judge to grant the defendants a trial by jury. The defendants contended that they were charged with the separate and distinct offenses of malfeasance in office (LSA-R.S. 14:134) and public bribery (LSA-R.S. 14:118), and that since the State would have to prove them guilty of public bribery in order to convict them of malfeasance in office, they were entitled to a jury trial. They argued that this was especially so because they were precluded from filling a motion to quash or a demurrer on the grounds of duplicity under LSA-R.S. 15:224.
There is no merit in defendants' Bill of Exceptions No. 4. The reasoning set forth in our discussion of Bill of Exceptions No. 2 applies to the instant bill. See Article VII, Sec. 41, Louisiana Constitution of 1921.
Bill of Exceptions No. 5 was taken to the refusal of the trial judge to grant defendants a suspensive appeal from his refusal to grant them a trial by jury.
There is no merit to this bill. The Constitution prescribes the instances where one is entitled to a jury trial. Where defendants are charged with a misdemeanor, an offense prohibited by LSA-R.S. 14:134, they are not entitled to a jury trial. Such was the case in the instant matter, and the trial judge committed no error in refusing defendants' request. Our discussion of Bill of Exceptions No. 2 applies to this bill also.
Bill of Exceptions No. 6 was reserved to the trial judge's ruling that certain evidence sought to be elicited from the State's witness, Philip Assevada, was irrelevant and inadmissible. The evidence pertained to the bonding of the contract on which the defendants are alleged to have demanded a refund. In their bill of exceptions, defendants aver that:
"* * * certain questions were asked of said witness by counsel for the defendants for the stated purpose of establishing the fact that the contractor, Arthur Donnelly, had a common interest with that of the bonding company which acted as surety on his performance bond, and that someone connected with the sewerage district in question, with whom Donnelly had a contract, had an interest in favoring the said bonding company by his actions in connection with the sewerage district. * * *"
We do not find that the evidence sought to be elicited would have affected the proof of the instant charge, nor do we find that the defendants were prejudiced by its omission.
LSA-R.S. 15:435 provides:
*481 "The evidence must be relevant to the material issue."
LSA-R.S. 15:369 states:
"In the discipline of his court the trial judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel."
There was no abuse of the trial judge's discretion, as the matter of the bond was not material to the question of appellants' guilt or innocence. State v. Washington, 225 La. 1021, 74 So.2d 200.
"* * * The trial judge has the discretion of determining what is and what is not relevant and material evidence, and his ruling in this respect will not be disturbed in the absence of obvious error. * * *" State v. Di Vincenti, 232 La. 13, 93 So.2d 676, 680.
Bill of Exceptions No. 6 is without merit.
Bill of Exceptions No. 7 was reserved to the trial judge's overruling defendants' objection to certain questions propounded to the State witness, Philip Assevada, on redirect examination. The district attorney was attempting to have the witness recall certain provisions of the contract herein involved. Counsel for the defendants contended that he was trying to impeach his own witness.
The testimony attached to this bill of exceptions convinces us that the district attorney was not impeaching the witness; he was seeking an explanation of this witness' prior testimony, some of which had been given on cross-examination.
"The redirect examination must be confined to the subject-matter of the cross-examination and to the explanation of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial judge, provided that the opportunity be not denied to recross on the new matter brought out on the redirect." LSA-R.S. 15:377.
We do not find that the trial judge abused his discretion; the defendants suffered no prejudice.
"Since the propounded question merely called for an explanation or a clarification of what had already been testified to on cross examination we doubt that it was objectionable. * *" State v. Goins, 232 La. 238, 94 So.2d 244, 251, certiorari denied 355 U.S. 847, 78 S.Ct. 74, 2 L.Ed.2d 57.
There is no merit to Bill of Exceptions No. 7.
Bill of Exceptions No. 8 was reserved to the trial judge's overruling further objection by counsel for the defendants to questions propounded to the State witness, Philip Assevada, while he was under cross-examination. The contention was made that the district attorney was attempting to impeach his own witness.
The objectionable question was:
"I am only asking you in regard to the testimony that you gave on cross-examination, you say this $15,000.00 for the inventory was included in payment of Certificate No. 28. I hand the original of No. 28 to you and the cancelled check, and ask you to refer to any part of the paper and do you see any payment of the $15,000.00 inventory in question."
We find no merit to Bill of Exceptions No. 8 and conclude that the following statement from the per curiam of the trial judge is correct:
"This was not an effort on the part of the District Attorney to impeach his own witness.
"The witness was still an employee of the three members of the sewerage district who were charged herein, and two of which were on trial.

*482 "As was observed at the time, the District Attorney was within his rights, if the witness was mistaken, to have the witness correct himself in accord with the facts.
"See per curiam to Bill of Exception No. 7."
Bill of Exceptions No. 9 was reserved to the ruling of the trial court permitting the playing of two recordings of alleged meetings between individuals other than the defendants, while the State witness, Arthur Donnelly, was under direct examination. Counsel for the defendants objected to the playing of these recordings on the ground that the alleged conversations recorded took place out of the presence of the defendants and no conspiracy was shown.
The able trial judge, in his per curiam to this bill, correctly states:
"The transcriptions, as well as the recordings marked State 9 and 12, were of conversations between Arthur Donnelly and the co-defendant Carlo P. Gioe, whose case was severed by the State at the opening of the trial. These recordings were made of conversations between these two on September 15 and November 6, 1957.
"The State's case developed that Melerine, Licciardi and Gioe were the three members of a sewerage district, and, that acting together and in concert they each solicited and accepted bribes from Donnelly in connection with, and as part of their official duties, and in so doing, committed the crime of Malfeasance in office. (LSA-R.S. 14:134)
* * * * * *
"As the acts and declarations of Gioe were binding upon the defendants Melerine and Licciardi, the recordings were admissible in evidence as proof of their guilt, without regard to the fact that conspiracy was not charged in the bill of information. The conspiracy having been proved, the Court applied Gioe's acts and declarations in conformity with law."
LSA-R.S. 14:24 provides:
"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."
In LSA-R.S. 14:26 it is stated:
"Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime. * * *"
The effect of declarations and acts of co-conspirators is set forth in LSA-R.S. 15:455 as follows:
"Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established."
We agree with the trial judge that a conspiracy was proved in this case. It was, therefore, not necessary that the bill of information allege conspiracy.
"* * * Where an indictment charges two or more jointly with murder, the charge involves a conspiracy, and proof of the conspiracy may be received without its being formally charged. * * *" State v. Terrell, 175 La. 758, 144 So. 488, 491.
"As defendants are jointly indicted, evidence tending to show conspiracy *483 between them is admissible, although the indictment does not expressly charge conspiracy in formal terms. * * *" State v. Robichaux, 165 La. 497, 115 So. 728, 730.
Since Carlo P. Gioe was jointly charged with the defendants, his recorded conversations with the State witness, Arthur Donnelly, with respect to the conspiracy herein proved, were admissible.
"* * * The acts and declarations of one conspirator within the scope of the conspiracy and in furtherance thereof is admissible against all co-conspirators, and the trial judge need not pass upon the question of conspiracy in the first instance, but may receive the evidence of the acts and declarations of the alleged conspirators, leaving it to the jury to give effect to them against all engaged in the conspiracy in the event the jury should find the conspiracy established. Marr's Crim.Juris. (2d Ed.) § 552, p. 847. * * *" State v. Dundas, 168 La. 95, 121 So. 586, 590.
Even though Gioe was not tried jointly with these defendants, his acts and declarations were imputable to them once the conspiracy was established. State v. Brasseaux, 163 La. 686, 112 So. 650. Since the defendants gained personal benefits from their conspiracy with Gioe, as stated in the recordings, the playing of these recordings was permissible to show such benefit. State v. Dowdy, 217 La. 773, 47 So.2d 496, certiorari denied 340 U.S. 856, 71 S.Ct. 75, 95 L.Ed. 627; State v. Smith, 193 La. 706, 192 So. 106.
For the reasons above assigned, there is no merit to Bill of Exceptions No. 9.
Bill of Exceptions No. 10 was reserved when the trial judge permitted the introduction in evidence of two transcriptions marked "State 9" and "State 12." Objection was made on the ground that the defendants were not present during the conversations which were recorded on these exhibits, and that the defendant who was present during the conversations was not on trial at the time.
Our reasoning in discussing Bill of Exceptions No. 9 applies to Bill of Exceptions No. 10, and we, therefore, find it without merit
Bill of Exceptions No. 11 was reserved to the trial judge's overruling the objection of counsel for the defendants to the introduction in evidence of "State 9" and "State 12."
"State 9" and "State 12" are transcriptions of conversations pertaining to the alleged illegal acts of the defendants. These conversations were between Carlo P. Gioe, the defendant who was granted a severance from the instant trial, and Michael Arthur Donnelly, Jr., President of Donnelly Construction Company, who reported defendants' activities to the district attorney and assisted in securing the evidence forming the basis of this prosecution.
Counsel for the defendants contended that the testimony of the party or parties allegedly present at the time the recordings were made would constitute the best evidence of what transpired, and that, inasmuch as said recordings were not completely audible, sufficient identification had not been made of the parties involved in the alleged recorded conversations.
We find no merit in counsel's assertion that the transcriptions present a question of best or secondary evidence. They are independent in nature and form a part of the evidence submitted on the trial of the case. Monroe v. United States, 98 U.S. App.D.C. 228, 234 F.2d 49, certiorari denied 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 76; 352 U.S. 937, 77 S.Ct. 219, 1 L.Ed.2d 170; 355 U.S. 875, 78 S.Ct. 114, 2 L.Ed.2d 79.
The original recordings were made by Michael Arthur Donnelly, Jr., through the means of a tape recorder and a Minifon secreted on his person and in his car. He *484 was instructed in the use of these devices by August A. Nobile, Jr. Transcriptions of the recordings were made by Charles A. Neyrey, court reporter.
The evidence attached to the instant bill shows that a stipulation was entered into between plaintiff and defendants. Defendants' contention that the stipulation is only an answer to a prayer for oyer is without merit. The trial judge in his per curiam states:
"Thereafter, on the 2nd day of June, 1958, as will be seen later on in this per curiam, the defendants Melerine and Licciardi, together with their attorneys, Mr. Dowling and Mr. Dymond, met with Mr. Neyrey, the Court Reporter, and Mr. Nobile representing the District Attorney, and Mr. Leander H. Perez, Sr.
"In accordance with the terms of the stipulation, the meeting took place in the office of the District Attorney in the City of New Orleans.
"At this meeting, the defendants and their attorneys, informed those present that they did not have an expert technician to inspect the recordings and the recording devices; that they did not have a stenographer, and, that they would be satisfied to accept the transcriptions made by Mr. Neyrey, the Court Reporter, as a compliance with their request for oyer.
"At this time several recordings were played in the presence of the defendants and their attorneys; that defendants and their attorneys left the place of meeting, with the understanding that they would receive copies of the transcriptions of the recordings made by Mr. Neyrey, the Court Reporter.
"Later and before the trial of case No. 4632 on June 10, 1957, Mr. Neyrey, the Court Reporter, furnished Mr. Dowling and Mr. Dymond, attorneys for defendants, the District Attorney and the Court with copies of the transcriptions of the recordings, intended to be offered by the state in both cases No. 4632 and 4634.
"Having in mind the difficulties and delays inherent in an effort to have the Court Reporter take down stenographically in the court room, on the trial of these cases, the recorded conversations contained on the wire and tape recordings, and then later transcribe them, the Court permitted the Court Reporter's transcriptions made in advance of trial to be admitted in evidence, after he had identified same, and, after Mr. Donnelly had testified as to these conversations, independent of the tape recordings, and transcriptions, and after Donnelly had identified in the recordings the conversations, as well as what was said by them when the recordings were played in open court on the trial of the case."
The trial judge was convinced that the transcriptions were accurate and that they were made from the original recordings. A review of the exhibits and testimony attached to this bill convinces us that he was correct. The trial judge, likewise, had the benefit of hearing Donnelly, Jr., testify, and he identified Donnelly's voice as being the same as that on the recordings from which the transcriptions were made. The testimony that Gioe was the other party to the conversations is uncontradicted.
This State has previously permitted the offering in evidence of similar recordings and transcriptions. State v. Alleman, 218 La. 821, 51 So.2d 83; cf., State v. Dooley, 208 La. 203, 23 So.2d 46; State v. Di Vincenti, 225 La. 689, 73 So.2d 806. We, therefore, conclude that the evidence was properly admitted.
"Lt. Thoman equipped himself with a Minifon to aid in the investigation. Through this device numerous conversations he held with various appellants were recorded on wires. The spools upon which the recordings were made *485 were turned over to Lt. Thoman's superiors in the Police Department. A number of recordings thus obtained were played for the jury over objections. We find no merit in any of these objections. Appellants contend, in the first place, that this evidence was inadmissible under the best evidence rule. They say that Lt. Thoman's testimony was the best evidence as to the conversations. But courts have consistently admitted such recordings in evidence. Schuyler v. United Air Lines, D.C.M.D.Pa., 94 F.Supp. 472, affirmed 3 Cir., 188 F.2d 968; Commonwealth v. Clark, 123 Pa.Super. 277, 187 A. 237; State v. Slater, 36 Wash.2d 357, 218 P. 2d 329; cases cited in Annotation, 168 A.L.R. 927; Burgman v. United States, 88 U.S.App.D.C. 184, 188 F.2d 637, certiorari denied 342 U.S. 838, 72 S.Ct. 64, 96 L.Ed. 1347; Gillars v. United States, 87 U.S.App.D.C. 16, 27, 182 F.2d 962, 973; Cf. People v. Hayes, 21 Cal.App.2d 320, 71 P.2d 321. Their competency as evidence derives from their reliability as a means of arriving at the truth. Of course, there must be evidence introduced from which it can be inferred that the recordings are accurate. Lt. Thoman provided such evidence by testifying as to the operation of the recording device, his method of operating it, the accuracy of the recordings, and the identities of the persons speaking.
* * * * * *
"Appellants say the recordings were not admissible as corroborative of Thoman's primary evidence because the latter had not been impeached, * * * citing Goins v. United States, 4 Cir., 99 F.2d 147, 150. But we do not rest the admissibility of the recordings upon a theory they constitute corroborative evidence, as is sometimes done. We think, as above indicated, that they are admissible as independent evidence of what occurred." Monroe v. United States, 98 U.S.App.D.C. 228, 234 F.2d 49, 54. Cf., Irvine v. People, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561; On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270.
The fact that a few portions of the recorded conversations were inaudible did not preclude their transcriptions from being admitted in evidence. The trial judge stated:
"The sufficiency of identification of voices was a question of fact for the Court. Needless to say the Court was satisfied with the proof thereof. * *"
In Monroe v. United States, supra, it is stated:
"Appellants also argue that particular recordings, because inaudible at times or incomplete, gave the jury only a part of what they purported to represent. They cite Hunter v. Hunter, 169 Pa.Super. 498, 83 A.2d 401; People v. Stephens, 117 Cal.App.2d 653, 256 P.2d 1033; and Williams v. State, 39 Ala. 532. No all embracing rule on admissibility should flow from partial inaudibility or incompleteness. The Court of Appeals for the Third Circuit, in United States v. Schanerman, 150 F.2d 941, 944, has said that partial inaudibility is no more valid reason for excluding recorded conversations than the failure of a personal witness to overhear all of a conversation should exclude his testimony as to those parts he did hear. Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy the recording is admissible, and the decision should be left to the sound discretion of the trial judge. This is especially so when the witness who heard the statements recorded also testifies, so that the recordings give independent support to his testimony. Wright v. State [38 Ala.App.64] 79 So.2d 66; * * *"
For the detailed reasons above assigned, we conclude that Bill of Exceptions No. 11 is without merit.
*486 Bill of Exceptions No. 12 was reserved when the trial judge permitted the playing of the recording of September 15, 1957, "State 9." Counsel for the defendants objected to the playing of the recording on the ground that the best evidence of what transpired at the time said alleged recording was made was the testimony of one or more of the persons present, and on the further ground that the defendants herein were not present during said alleged conversation.
There is no merit to this bill, for the reasons set forth in our discussion of Bill of Exceptions Nos. 9 and 11.
Bill of Exceptions No. 13 was reserved to the refusal of the trial judge to strike from the record the playing of "State 9." Counsel for the defendants urged that the playing be stricken, alleging that it was a self-serving declaration adding nothing to the case, and that many portions of the recording contained hearsay testimony about other transactions which were prejudicial, irrelevant, and immaterial.
Self-serving declarations by an accused, unless a part of the "res gestae", are not admissible in evidence. State v. Vernon, 197 La. 867, 2 So.2d 629; State v. McDonald, 224 La. 555, 70 So.2d 123.
"State 9," however, was not a self-serving declaration; it was a recorded conversation between the State witness, Donnelly, and the codefendant, Carlo P. Gioe. The recording and its transcription constituted an independent fact going to prove the defendants' guilt.
The case of State v. Dore, 227 La. 282, 79 So.2d 309, cited by appellants, is not apposite. There, the State was relying on written and verbal extra judicial statements of the prosecuting witness, not part of the "res gestae," to prove the guilt of the accused. Here, the witness Donnelly was not using the recorded and transcribed conversation as a self-serving statement on his own behalf but as independent evidence to show what Gioe, a co-defendant conspirator, stated with respect to the alleged illegal acts herein charged.
Bill of Exceptions No. 13 is without merit.
Bill of Exceptions No. 14 was reserved to the ruling of the trial judge permitting the playing of "State 11" during the trial. Objection was made that it was a self-serving declaration, adding nothing to the case, and containing only statements of the State witness, Arthur Donnelly, and that many portions of the recording contained hearsay testimony about other transactions, the same being prejudicial, irrelevant and immaterial.
In his per curiam, the trial judge correctly states:
"The recording (State 11) of October 14th, was of a conversation between the witness Donnelly and the defendant Licciardi.
"While it is true that Donnelly did most of the talking, however, an examination of the transcription will show that Licciardi made responses, and otherwise engaged in conversation with Donnelly."
The recording was definitely not hearsay; State v. McMullan, 223 La. 629, 66 So.2d 574; it was independent evidence going to prove the guilt of the accused. Our reasoning in discussing Bill of Exceptions No. 13 also applies to the instant bill, and Bill of Exceptions No. 14 is, therefore, without merit.
Bill of Exceptions No. 15 was reserved to the trial judge's overruling defendants' objection to the admission in evidence of certain testimony of the State witness, Arthur Donnelly. Objection was made on the ground that the testimony had been recorded and the recording would constitute the best evidence.
The error of defendants' contention is correctly pointed out by the trial judge as follows:

*487 "The testimony hereinabove objected to was given by the witness in detailing the conversations had with Licciardi, independent of, and without regard to the transactions and recordings. As such, it was admissible as a factual recitation of a part of the offense for which Licciardi and Melerine were on trial.
"The Court fails to see wherein the witness was precluded from giving his conversation with Licciardi, simply because a recording of the conversation was made simultaneous therewith, and a transcription of same was made subsequent thereto."
Our detailed discussion of Bill of Exceptions No. 11 applies to the instant bill. Bill of Exceptions No. 15 is, therefore, without merit.
Bill of Exceptions No. 16 was reserved to the refusal of the trial judge to strike "State 12" from the evidence on the ground of alleged inaudibility of the voices recorded.
Our reasoning in discussing Bill of Exceptions No. 11 applies to the instant bill, and we, therefore, find it without merit.
Bill of Exceptions No. 17 was reserved to the trial judge's overruling defendants' objection to the admission in evidence of certain testimony of the State witness, Arthur Donnelly. Objection was made on the ground that the testimony related the contents of a conversation between the State witness, Arthur Donnelly, and Gioe, and was, therefore, hearsay. Further objection was made on the ground that the testimony had been recorded and the recording constituted the best evidence.
The trial judge correctly answered the defendants' contentions as follows:
"The testimony hereinabove objected to was given by the witness in detailing a conversation had with the co-defendant Carlo P. Gioe, independent of, and without regard to the transcription and recording. As such it was a factual recital of a part of the offense, for the commission of which crime, Gioe, Licciardi and Melerine stood charged. The fact that Gioe's case had been severed, did not make the inquiry objectionable as hearsay. (See Per Curiam, Bill of Exception No. 9.)"
For a discussion of "Best Evidence," our reasoning in Bill of Exceptions Nos. 9 and 11 applies to the instant bill.
Bill of Exceptions No. 17 is without merit.
Bill of Exceptions No. 18 was reserved to the ruling of the trial judge permitting the playing of "State 12" over the objection of counsel for the defendants that it was not completely audible and did not constitute the best evidence of what transpired during the alleged conversation between Michael A. Donnelly, Jr.[4] and Carlo P. Gioe.
Our discussion of Bill of Exceptions No. 11 applies to the instant bill. We, therefore, find it without merit.
Bill of Exceptions No. 19 was reserved to the action of the trial judge in overruling defendants' objection to the State's offering in evidence the tape recordings of September 15, 1957 ("State 16"), the wire recording of October 14, 1957 ("State 17"), and the wire recording of November 6, 1957 ("State 18"), with the understanding that they would be made available for use by the appellate court should an appeal be taken. Objection was made on the ground that the recordings were inaudible; the testimony of the participants was the best evidence of the alleged conversations; the recordings contained hearsay evidence; and there was not sufficient identification of the voices.
*488 Our discussion of Bill of Exceptions No. 11 answers these objections.
We wish to state, however, that the able trial judge, in his numerous per curiams, handled, explained, and answered (citing authorities in point to support his rulings) the exceptions taken by counsel for the defendants in such a thorough and correct manner we did not find it necessary to avail ourselves of the tape and wire recordings.
Bill of Exceptions No. 19 is without merit.
Bills Nos. 20 and 21 will be treated jointly. They were handled in this manner by the trial judge, and are discussed together in appellants' original brief and in the State's brief.
Bills Nos. 20 and 21 were reserved to the action of the trial judge in refusing defense counsel's request for permission to have the recording of October 14, 1957 ("State 11") replayed, for the purpose of showing that the court reporter's transcription thereof was not correct and that he had to listen to the recording more than one time in order to make the transcription.
The following testimony of Mr. Charles A. Neyrey, who was called as a witness for the defense, is the basis of the instant bills:
"Q. Now, Mr. Neyrey, I direct your attention to the transcript of the recording allegedly made on October 14, 1957. You are the reporter who made this transcript? A. Yes, I am.
"Q. And you made this transcript from the original recording and not from the re-recording? Is that correct? A. That is correct.
"Q. There was no editing or suggesting of the conversation by Mr. Nobile or anyone else, is that correct? A. That is correct.
"Mr. Dowling to the Court:
"Your Honor, I ask to have the recording of October 14th played
"By the Court:
"I cannot understand why you would want to have these recordings played. Mr. Dowling, keep in mind that this is your witness. I have the right to inquire what is your purpose in having this recording played?
"Mr. Dowling:
"First, I ask that these recordings be played and that the transcripts are irrelevant and that if the recordings will be played now, I will show you and prove to you they are incorrect. I will prove something about the quality of the recording.
"By the Court:
"All right, go ahead, ask him.
"By Mr. Dowling:
"Mr. Neyrey, I direct your attention to specific parts
"By the Court:
"I have listened to those recordings this morning. I am not going to sit here and listen to them again, Mr. Dowling.
"By Mr. Dowling:
"I'm going to object to the Court's ruling in not permitting me to do that.
"By the Court:
"You have had your opportunity to cross-examine this witness this morning. I cannot understand your purpose of having him say that he could not make out those statements or voices after listening to them already and I cannot understand your attempting to contradict your own witness. Remember, this is your own witness, Mr. Dowling.
"By Mr. Dowling:
"(Shakes head in the affirmative) The purpose of placing this witness on the stand is to see if he can tell us *489 about certain portions of the actual recordingcertain voices on certain occasions. The purpose is to show that the witness had to listen to the tape recordings more than one time on each of them.
"By the Court:
"Well, why not ask him?
"By Mr. Dowling:
"I would like to play the recording over again.
"By the Court:
"You cannot play the recording again.
"By Mr. Dowling:
"I cannot play this recording back to him?
"By the Court:
"No.
* * * * * *
"By Mr. Dowling:
"Q. Mr. Neyrey, you were present in Court this morning when the State submitted these recordings to be played. From these recordings, were you able to understand at the time, all of the portions of all of the recordings which were played? A. Not all of the portions, because there was no speaker directed in the location of where I was sitting.
"Q. I ask you, at the time you made this transcript, were you able to transcribe from the first play-off in each of those recordings, or did it require listening to the recording several times? A. No, I listened to them several times and checked them several times against my transcript for the simple reason that I wasI had to be sure that what I put down was exactly what was on the tape and I didn't have the benefit of the amplifier as in the court room today." (Italics ours)
"Q. In other words, after first listening to certain portions of these recordings, and in some instances the audibility and the quality was poor, and you had to re-listen to put down what you thought was being said. Is that correct? A. Yes."
The court reporter admitted that not having the benefit of an amplifier he had to play the recording several times. Nowhere does he testify that he did not transcribe the recording as a whole, nor does he state that he made interlineations or guessed at what was being said in the recorded conversation. He merely assured himself, after several playings of the recording, that his transcription was correct.
The trial judge had already heard, and was satisfied with the audibility of the recording. Our examination of the transcription convinces us that it is complete.
As authority for his objection, counsel for the defendants cites the case of United States v. Schanerman, 3 Cir., 150 F.2d 941, 944, in which the following statement was made:
"No error is found, as charged by appellant, in the refusal of the district court to instruct the jurors to disregard what they had heard when records of conversations between appellant and Finneran were `played' in the hearing of the jury during the trial. This type of evidence was admissible upon the authority of Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322. Transcribed notes, made by a stenotype operator from hearing the records repeatedly `played,' were properly excluded; but the mere fact that certain portions of the mechanically recorded conversations were less audible than others did not call for exclusion of what the jurors personally heard from the `playing' of the records. There would be no more valid reason for exclusion of the mechanically recorded conversations than there would be for excluding competent conversations, *490 overheard in part, by human witnesses."
We do not believe that the Schanerman case, supra, is apposite. The statement, "Transcribed notes, made by a stenotype operator from hearing the records repeatedly `played', were properly excluded," did not pertain to the merits of the case. There the conviction and sentence was set aside because the trial court refused to instruct the jury that an indictment was a mere accusation against the defendant and not evidence of his guilt.
Counsel for the defendants also relies on the following statement from Wharton's Criminal Evidence, Sec. 695, p. 683, which, as shown by our above statements, is not apposite:
"Recorded conversations are admissible although parts of the recording are less audible than other parts. They should, however, be excluded if inaudible to the point of not being intelligible. It is proper to provide the jury with a typed transcript of the recording which jurors can use while listening to the recording, but it has also been held that when parts of a recording were not very audible, a typewritten transcript made by a stenotype operator who had listened to repeated playings of the recording was inadmissible."
We conclude that the replaying of "State 11" was a matter for the discretion of the trial judge. LSA-R.S. 15:369. We find no abuse in the discretion he exercised in not permitting "State 11" to be played a second time; nor do we find that the defendants have suffered any prejudice constituting reversible error.
For the reasons above assigned, Bills of Exceptions Nos. 20 and 21 are without merit.
Bill of Exceptions No. 22 was reserved to the refusal of the trial judge to grant the defendants a new trial. In their motion for a new trial defendants averred that the verdict was contrary to the evidence, and they incorporated the numerous objections which they had raised in their twenty-one bills of exceptions.
This bill presents nothing for our review. State v. Smith, 234 La. 19, 99 So. 2d 8; State v. Rachal, 211 La. 227, 29 So.2d 774.
Bill of Exceptions No. 22 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
SIMON, J., concurs in the decree.
NOTES
[1] "* * * Count One: While Celestine Melerine, James Licciardi and Carlo P. Gioe were serving as duly appointed and qualified Members of the Board of Supervisors for Sewerage District No. 2 of the Parish of St. Bernard, Louisiana and constituted the entire said Board, they wilfully and intentionally performed duties of their said Offices in an unlawful manner by demanding of M. Arthur Donnelly, Jr., President of Donnelly Construction Company, Contractor, under contract with said Sewerage District Board for construction of the sewerage system in said Sewerage District, the sum of Three Thousand and No/100 ($3,000.00) Dollars for their official approval, as Member of said Sewerage District Board, of said contractor's inventory for unusued materials ordered by said contractor in connection with the construction of said sewerage system, of which said sum the said Melerine, Licciardi and Gioe unlawfully secured from said Donnelly the payment of Five Hundred and No/100 ($500.00) Dollars each.

"Count Two: The District Attorney aforesaid, in the name of and by the authority of said State, further presents that on or about and between June 19, 1957 and October 14, 1957, the said Celestine Melerine, James Licciardi and Carlo P. Gioe, while serving as duly appointed and qualified Members of the aforesaid Sewerage District Board and constituting the entire said Board, wilfully and intentionally performed duties of their said Offices in an unlawful manner by demanding of the aforesaid M. Arthur Donnelly, Jr., the payment to them of a bribe of Fifteen Thousand and No/100 ($15,000.00) Dollars, or Five Thousand and No/100 ($5,000.00) Dollars to each of them, for their official approval as Members of said Sewerage District Board of an increase of Thirty Thousand and No/100 ($30,000.00) Dollars in said Contractor's unit prices in the extension of said contract to include Work Order No. 2 amounting to about $152,000.00, secured from a second bond issue for said Sewerage District. * *"
[1] "Public bribery is the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:

"(1) Public officer or public employee; * * *" LSA-R.S. 14:118.
[2] Defendants applied to this Court for remedial writs when the motion to quash was refused, No. 44,152 of the Docket of this Court. This Court stated: "Writs refused. Relators have remedy, in the event of conviction, by appeal or by invoking the supervisory jurisdiction of this court."
[3] "Whoever commits the crime of public bribery shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than five years, or both." LSA-R.S. 14:118.
[4] The State witness Donnelly, referred to as Michael A. Donnelly, Jr., M. Arthur Donnelly, Michael Arthur Donnelly, and Arthur Donnelly in the various bills of exceptions, per curiams, and documents in the record, is one and the same person.