HAMITER, Justice.
A bill of information was filed in the Criminal District Court for the Parish of Orleans charging that on August 16, 1958 Victor Linkletter, Joseph Lacaze, John H. Soldani and Ruth Morrisson committed simple burglary of the building and structure No. 134 Carondelet Street, Orleans Parish, belonging to one Lawrence Federico with the intent to commit a theft therein. Later, the court granted a severance as to Lacaze and Ruth Morrisson.
Trial of Linkletter and Soldani by a jury followed, at the conclusion of which both were found guilty as charged. Thereupon, the judge sentenced each to imprisonment in the state penitentiary at hard labor for a period of nine years.
Linkletter and Soldani appealed to this court, and they rely on three bills of exceptions to obtain a reversal of the convictions and sentences. .
In the prosecution the state relied solely on circumstantial evidence. Its theory of the case was that appellants, along with Lacaze and others, committed the crime charged after having conspired to burglarize almost all of the business establishments located within the square or block surrounded by St. Charles, Canal, Carondelet and Common Streets, including 134 Carondelet Street; that in furtherance of the conspiracy they, on August 12, 1958, rented the third floor of a building at 719 Common Street (also within such square) which permitted ready and easy access to the mentioned business establishments — this by walking on adjoining roofs and gaining entrance to the nearby various structures through sky lights and upper windows thereof; and that, for accomplishing the contemplated burglaries, they had assembled at the Common Street address much burglary equipment, it consisting primarily of a ladder, oxygen and acetylene cylinders, goggles, crow bars, and three loaded pistols.
In its attempt to show the asserted conspiracy the state offered the testimony of several police officers regarding the actions of Linkletter and Lacaze on August 24, 1958, or eight days after the date of the crime charged. When the judge overruled *1005 a defense objection to this testimony bill of exceptions No. 1 was reserved.
Appellants themselves place little emphasis on their first bill. The briefs of their counsel furnished to us merely state that it “is being submitted for consideration by the Court on the information contained in the formal bill filed of record and the per curiam of the Court.” Nevertheless, we find no merit in the bill. The circumstances surrounding its reservation indicate that the objection was aimed at the claimed irrelevancy of the testimony. However, we note that it placed Linkletter and Lacaze in physical control of the third floor premises of 719 Common Street, including the large quantity of burglary equipment found there which they had previously assembled. The evidence, therefore, was relevant and admissible to prove intent and motive with respect to the commission of the crime charged. LRS 15:446 and State v. Green, 205 La. 439, 17 So.2d 620. Moreover, the actions described in the testimony elicited were not too remote, the state having relied entirely on circumstantial evidence to prove its case. State v. Jackson, 153 La. 517, 96 So. 53.
Bill of exceptions No. 2 was taken to the trial judge’s refusal to grant a mistrial when the assistant district attorney, during his closing argument, made the following comment: “ * * * and gentlemen of the jury I tell you that no reasonable hypothesis of innocence has been advanced to prove to you otherwise.” We find no error in the judge’s ruling. In our opinion the remarks complained of did not, as defense counsel urge, constitute either a comment on the failure of the appellants to take the stand or an expression of a personal opinion as to their guilt based on evidence outside the record. The language assailed, as we understand it, related only to the prosecutor’s appreciation of the evidence adduced. Indicative of this conclusion is his later statement, made to the jury following reservation of the bill of exceptions, that: “Let me put it a different way. I can see no reasonable hypothesis of innocence and I am sure you can’t either.” The import of the complained of remarks was, undoubtedly, that the evidence introduced by the state had excluded every reasonable hypothesis of innocence; that it was, in other words and as held to he proper in State v. Bentley, 219 La. 893, 54 So.2d 137, 138, “uncontradicted and uncontraverted.”
The third and last bill of exceptions relates to the judge’s overruling of motions for a new trial. With respect thereto appellants, in this court, complain that there was no evidence whatever to support the convictions; and it is urged that, therefore, under the authority of numerous decisions, including those in State v. Nomey, 204 La. 667, 16 So.2d 226; State v. La Nasa, 229 La. 842, 87 So.2d 1 and State v. Harrell, *1007 232 La. 35, 93 So.2d 684, they must he discharged.
We seriously doubt that the motion for a new trial filed by Linkletter properly raised the issue of whether there was any evidence adduced to support the charge. It, we find, merely asserted the insufficiency of the proof to connect him with the crime; it did not allege a total lack thereof. Be that as it may the issue was presented by Soldani in an amended motion, and in reviewing the record for the purpose of passing on his complaint we have also examined it with reference to that of Linkletter.
Unquestionably, there was evidence tending to support the conviction of Linkletter. Thus, some of the police officers who investigated the charged burglary of 123 Carondelet Street (known as Variety Stag Bar) observed that entry into the safe or vault there (from which funds in excess of $1500 were stolen) had been accomplished by burning with a blow torch, and that at the scene were two crow bars painted green. After Linkletter’s arrest some green paint in a can was found in his apartment at 930 Poydras Street which, according to a laboratory analysis, exactly matched that on such crow bars. Also in his apartment was a card on which were listed, in Link-letter’s handwriting, addresses and telephone numbers of numerous businesses located in the square in question.
Again, two days before the commission of the burglary a man, who identified himself as Joseph Cramer, purchased from the Industrial Air Products Company in New Orleans two cylinders filled with oxygen and acetylene, respectively. Six days later those articles, in partially used condition, were exchanged by the same person for two new and completely filled ones. And the latter two were among the burglary equipment that was found under Linkletter’s physical control at 719 Common Street on August 24, 1958.
Furthermore, on the day of the burglary a regular customer of the Variety Stag Bar observed Linkletter in that establishment carefully examining the rear portion of the premises where the safe or vault was located. According to the customer Link-letter appeared to be “casing the place”, and he so notified the proprietor.
In our opinion such evidence, although circumstantial, would tend to connect Linkletter with the charged crime’s commission. And, this being true, it was exclusively the province of the jury to determine what weight should be accorded thereto. As stated in State v. Matassa, 222 La. 363, 62 So.2d 609, 614, “* * * It is elementary that in criminal cases this court cannot pass upon the sufficiency of the evidence. Where some evidence has been adduced upon which a verdict of guilty can be predicated (no matter how little), the question of its sufficiency is exclusively for the jury’s determination. *1009 * * * ” See also State v. Di Vincenti, 225 La. 689, 73 So.2d 806; State v. Hand, 228 La. 405, 82 So.2d 691; State v. McCarty, 232 La. 145, 94 So.2d 11; and State v. Domino, 234 La. 950, 102 So.2d 227.
However, we are compelled to reach a different conclusion with respect to Sol•dani’s alleged participation in the burglary. In the record there is no evidence whatever from which it can reasonably be concluded that he played a part in the commission of the crime charged. The state established only three facts relative to him. And none, ■considered either separately or collectively, indicates that he participated. These facts are as hereafter set forth.
1. Soldani was a partner of Linkletter and Ruth Morrisson in the operation of a novelty shop at 4516 Magazine Street in the City of New Orleans (this establishment was located a considerable distance from the scene of the crime and in an entirely different section of the city), on the premises of which some paint in cans was found. But it was affirmatively shown that such paint was not the same as that on the crow bars observed at 134 Carondelet Street after the burglary. Moreover, Soldani did not actively participate in that business; nor was there any showing of his association, frequently or otherwise, with Linkletter, Lacaze or Ruth Morrisson.
2. According to the elderly manager of the Elks Club of New Orleans, located at 705 Common Street, “this fellow on the left” (presumably Soldani) came into the club during an- afternoon some days after the burglary (no definite date is given) and demanded money. However, he was not masked, and he had nothing in his hands. On the refusal of his demand he left the premises.
3.On August 24, 1958 an automobile registered in February of that year in the name of Soldani was used by Linkletter and Lacaze to transport oxygen and acetylene cylinders to 719 Common Street. The same vehicle had been employed several days previously in hauling equipment of that nature to and from the Industrial Air Products Company in New Orleans. Also on August 20, 1958 Linkletter was issued a traffic ticket while driving such car. But there was no showing as to how or under what circumstances the automobile was obtained by Linkletter, or that it was used in the commission of the burglary, or that Soldani was ever in it with or without his alleged co-conspirators.
For the reasons assigned the conviction and sentence of Victor Linkletter are affirmed. Further, the conviction and sentence of John H. Soldani are annulled and set aside and he is hereby ordered discharged.