MARCUS, Justice.
Patricia A. Shores was charged by bill of information with theft of flowers valued at $41.20, in violation of La.R.S. 14:67. After trial by a judge, she was found guilty as charged and was thereafter sentenced to pay a fine of $250.00 and costs and to four months’ imprisonment, and in default of payment of the fine to serve an additional sixty days in parish prison. The sentence of four months’ imprisonment was suspended, and the defendant was placed on active probation for one year. Upon defendant’s application, we granted a writ of review under our supervisory jurisdiction.[1] La. Const, art. 5, § 5(A) (1974); La.Code Crim. P. art. 912.1.
Defendant presents three assignments of error for our consideration. Finding merit in her third assignment of error, we consider it unnecessary to discuss the other two.
Defendant’s third assignment of error complains of the trial judge’s denial of her motion for acquittal grounded on the state’s failure to produce any evidence that defendant committed each essential element of the crime charged. In a trial by a judge alone, a motion for acquittal shall be granted where there is no evidence that defendant committed the crime charged or an essential element thereof. La.Code Crim. P. art. 778, as amended, La.Acts 1975, No. 527, § 1; State v. Daniels, 326 So.2d 340 (La.1976); State v. Douglas, 278 So.2d 485 (La.1973).
The defendant is a woman who was convalescing from surgery at the time the crime is alleged to have occurred. At trial, Jenny L. Hill and Rose Mary Adams, co-proprietors of Gail’s Flower Shop, were called as witnesses by the state. Jenny Hill related that she took a telephone call from a woman for an artificial flower arrangement on March 20, 1975. The caller identified herself only as a temporary secretary from the office of Ray Gates, a local businessman, and said that she was replacing Mrs. Patricia Shores, the defendant, at her job while she was absent because of illness. According to Mrs. Hill’s testimony, *194 the caller stated that Mr. Gates, having discovered that defendant had undergone surgery, wanted to send a floral arrangement to her home as a gift. Mrs. Hill and the caller agreed that two arrangements, one dried and the other artificial, would be sent to defendant’s home and that she would keep the one she preferred. It was also agreed that a card would be sent with the flowers, and that on the card would be written: "Don’t try to fool this old man anymore. Hurry back, we miss you. Mr. ‘G.’ ” Mrs. Hill asked the caller what the color scheme of defendant’s house was so that the floral arrangement could be coordinated with it, but the caller could supply little information in this regard. Mrs. Hill testified that her conversation with Mr. Gates’ “secretary” lasted about 35 to 40 minutes. On cross-examination, Mrs. Hill admitted that she had never heard of Mrs. Shores until her name was mentioned in the telephone conversation, nor did she know the caller’s identity.
Mrs. Hill’s business partner, Rose Mary Adams, and her husband testified that they personally delivered the two floral arrangements to defendant’s address the same day. After defendant met them at the door, they went inside her house, and, displaying the arrangements, explained that she was to keep one of them as a gift. After examining the two arrangements for a few minutes, defendant chose one, and Mrs. Adams and her husband left.
Ray Gates, the man to whom the flowers were billed, testified that he had never authorized anyone to buy flowers for defendant. He further stated that he had never had anyone named Patricia Shores in his employ, that he did not know defendant, and that he had never seen her until the trial of this case. Mr. Gates informed Mrs. Hill that he did not order the floral arrangement. Mrs. Hill and Mrs. Adams, however, both testified that after learning that the purchases were unauthorized they made no effort to regain possession of the flowers from defendant.
The state also called as witnesses the proprietors of two other florist shops in Alexandria. Lois Smith Burns, owner of the first, testified that she received a call during May, 1975 from a woman identifying herself only as a secretary from Mr. Ray Gates’ office. This caller, like the person who telephoned Gail’s Florist, also ordered an artificial flower arrangement and charged the purchase to Mr. Gates. The caller said that the flowers, a gift from her employer, were to be sent to Mrs. Patricia Shores. A note stating that the floral arrangement was from “Mr. G.” was to accompany the flowers. Mrs. Burns delivered the arrangement personally to defendant who, according to the florist’s testimony, appeared visibly ill at the time. A day or two later, Mrs. Burns received a call from Mr. Gates informing her that he did not order the flowers. Mrs. Burns called defendant’s home, spoke to her maid, and told her what had happened. Mrs. Burns sent her son to pick up the flowers the same day. Her son testified that he did not encounter any opposition when he went to get the flowers. He stated that when he arrived Mrs. Shores’ maid let him in, showed him where the flowers were, and allowed him to take them.
Ted K. Dauzat, another local florist, recounted a similar story at trial. After being informed that Mr. Gates did not authorize the order, he, like Mrs. Burns, returned to defendant’s home, met her maid at the door, and retrieved his floral arrangement (valued at $15.00) without difficulty.
Defendant called one witness, her husband, who testified that his wife had just returned from the hospital when he noted that she had received “three or four” floral arrangements, which he assumed to be gifts from well-wishers. He had no idea who caused the flowers to be sent to his wife, but surmised that she had been “set up” for the crime by an enemy who wished her harm.
*195 La.R.S. 14:67 defines the crime of theft as follows:
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
Since the “taking” of the flowers was consensual, the state was required to prove that the flowers were taken instead by means of fraudulent conduct, practices, or representations. The only fraudulent misrepresentation shown to have occurred in this case was the placing of the telephone call that conveyed the false information. Clearly, the identity of the person who made that call is an essential element of the crime charged.
The state relies on the fact that the flowers were delivered to defendant’s home as evidence that she was the caller. Under the circumstances of this case, we cannot say that the fact that the caller ordered that the flowers be delivered to defendant’s home supports a reasonable inference that defendant made the calls. Hence, there was no evidence that defendant made the call to Gail’s Florist Shop. Finding no evidence of the identity of the person who placed the telephone order, an essential element of the crime, we conclude that the trial judge erred in denying defendant’s motion for a judgment of acquittal.
DECREE
For the reasons assigned, the conviction and sentence are reversed, and the case is remanded to the trial court for the granting of a judgment of acquittal in accordance with this opinion.
SUMMERS, J., dissents for the reasons assigned.

. 326 So.2d 369 (La.1976).