343 So.2d 712 (1977)
STATE of Louisiana
v.
Willie Henry ELZIE.
No. 58507.
Supreme Court of Louisiana.
March 7, 1977.
*713 James D. Sparks, Jr., Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Brian E. Crawford, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant Elzie was convicted of possession of cocaine with intent to distribute, La.R.S. 40:967 A(2), and sentenced to five years in the state penitentiary.
Upon his appeal the most serious issue is raised by Assignment of Error No. 7. By this assignment, the defendant alleges that the trial court erroneously denied his motion for a new trial, since the state introduced no evidence at all to prove that the cocaine found in his trunk was possessed "with intent to distribute."[1]

(1)
The defendant was charged with and convicted of a violation of La.R.S. 40:967 A(2). This statute makes it unlawful "for any person knowingly or intentionally * * * (2) to . . . possess with intent to distribute a . . . controlled dangerous substance classified in Schedule II." (The latter schedule includes cocaine, see La.R.S. 40:964, Schedule II A(4).)
Specific intent is required to commit the crime to possess cocaine "with intent to distribute." The italicized provision qualifies the intent statutorily required to commit the crime defined.[2]
Thus, in Louisiana, we require proof of specific intent where the statutory definition *714 of a crime includes the intent to produce or accomplish some prescribed consequence (the frequent language being "with intent to . . ."). See e. g. State v. Lewis, 288 So.2d 348 (La.1974) (burglary); State v. Fontenot, 256 La. 12, 235 So.2d 75 (1970) (obscenity); and State v. Daniels, 236 La. 998, 109 So.2d 896 (1959) (public intimidation), (overruled insofar as a procedural point, State v. Gatlin, 241 La. 321, 129 So.2d 4, 7-8 (1961), but not as to its substantive holding). See also LaFave and Scott, Criminal Law, Section 28 (1972).
Narcotics offenses involving possession with intent to distribute therefore require proof of specific intent. See State v. Medlock, 297 So.2d 190 (La.1974). Cf. State v. Clark, 338 So.2d 690, 692 (La.1976) and State v. Banks, 307 So.2d 594, 597 (La.1975), distinguishing Medlock in the case of simple distribution crimes which do not specify "intent to distribute."
Specific criminal intent is defined by La.R.S. 14:10(1): "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
Specific intent is statutorily distinguished from general criminal intent. The latter exists "when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La.R.S. 14:10(2).
In summary, specific intent is present when from the circumstances the offender must have subjectively desired the prohibited result. On the other hand, general intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire on his part to have accomplished such result.
Applied to the present case, to convict the accused the state was required to prove beyond a reasonable doubt not only that he possessed the cocaine found on his premises, but also that he did so with the specific subjective intention of possessing it in order to distribute it.

(2)
By his motion for a new trial, the defendant contends that there is a total lack of evidence to prove any specific intent on his part to possess the cocaine "with intent to distribute." For appellate purposes, this does not raise a reviewable question of law unless there is a total lack of evidence to prove the crime or an essential element of it. State v. Perkins, 337 So.2d 1145 (La.1976); State v. Williams, 310 So.2d 513 (La.1975).
In the instant case, the state simply proved that the defendant possessed less than 7/10th of an ounce of a substance containing one percent of cocaine. Arguing that the evidence shows this amount was sufficient for twenty individual cocaine uses (at the customary one-quarter teaspoon each) of the substance, the state contends that the trial jury was entitled to infer from this circumstantial evidence that the accused possessed the cocaine with intent to distribute it.
It is true that the requisite specific intent may be based upon a reasonable jury inference from circumstantial evidence, such as the quantity of the illegal drug and the surrounding circumstances of its possession. State v. Sibley, 310 So.2d 100 (La.1975).
La.R.S. 15:438 provides: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." (Italics ours.) The issue of whether every reasonable hypothesis of innocence has been excluded presents a question of law. State v. Williams, 310 So.2d 513 (La.1975); State v. Pryor, 306 So.2d 675 (La.1974); State v. Heymann, 256 La. 18, 235 So.2d 78 (1970); State v. Linkletter and Soldani, 239 La. 1000, 120 So.2d 835 (1960); State v. La Borde, 234 La. 28, 99 So.2d 11 (1958).
*715 For purposes of appellate review, the issue before us then is whether there is some evidence from which the jury could reasonably conclude that beyond a reasonable doubt the accused in the present instance possessed the cocaine with intent to distribute it. Stated another way, did the evidence before the jury, reasonably accepted by it, exclude as a matter of law every other reasonable hypothesis, such as that the accused possessed the cocaine for personal consumption rather than for distribution to others?
See: State v. Andrews, 337 So.2d 1175 (La.1976); State v. Shores, 334 So.2d 193 (La.1976); State v. Willis, 325 So.2d 227 (La.1975); State v. House, 325 So.2d 222 (La.1975); State v. Williams, 310 So.2d 513 (La.1975).

(3)
The evidence produced by the state is as follows:
There was no testimony that the accused had ever distributed or even used drugs in the past. The sole evidence introduced was the cocaine seized in the search pursuant to a warrant, and a quarter teaspoon and a pair of scales found in a nightstand beside the accused's bed. No packaging materials or other indicia of distribution practices were found.
The principal evidence found in the search was a small plastic pill bottle (2½ inches high) containing 18.7 grams,[3] or less than 7/10th ounce, of a white powdery substance. Upon chemical analysis, this substance contained 1% cocaine, or about 7/thousandths of an ounce of cocaine.
The chemist who analyzed it found the substance to contain by far the lowest percentage cocaine-content he had analyzed in the 35 occasions he had been called upon to perform this service in the past. He estimated the average cocaine-content previously found by him to be 10-15%, although he also admitted that he did not ordinarily deal with street quantities. (However, he did feel that the cocaine mixture he found was sufficient to give a reaction to a firsttime user not habituated to cocaine.)
The plastic pill bottle was found in a locked foot locker in a hall closet. The locker also contained other non-contraband personal effects, such as a speaker system, as well as a plastic bag of marijuana.
The other evidence relied upon by the state was found in a nightstand next to the accused's bed. In a little glass vial were a few particles of a white powdery substance, too small to weigh, which upon the analysis which consumed it showed the presence of cocaine, indicated by its chemical reaction to be of purer content than the other substance (although impossible to quantify because of its minuteness).
Additionally, in the nightstand was found a quarter teaspoon measuring spoon and a small pair of aluminum scales.
The detectives testified that the spoon could be used for measuring individual doses by a user, but that it could also be used by a person cutting the pure cocaine down by mixing it with another substance (quinine, lactose, milk sugar, etc.) to reduce the cocaine content for street level use. The scales are not shown to be associated with the distribution of cocaine.
From our description thus far, it is far more likely that the possession was for personal use of the extremely diluted substance weighing 7/10th of an ounce, accompanied by personal use of items found by the bedside:
The defendant at the time of the search had stated that the substance was lactose. Absent evidence that the 1% residue of cocaine found in it was a customary mixture (the evidence is in fact, to the contrary) for street sales, the presence of this substance (containing only minute quantities of cocaine) is more consistent with possession for personal use in mixing or sniffing cocaine than with possession for distribution purposes.
*716 Nevertheless, we were given some concern as to the correctness of this conclusion by the testimony of the narcotics officers that cocaine, diluted to street mixture, sold for $20 to $35 per quarter teaspoon, the customary measure of distribution and of use. Since the tube contained an estimated twenty quarter-teaspoons, the prosecutor suggested that the tub contained a cocaine mixture worth $400 to $700. From this circumstance, he argued, a trier of fact might reasonably conclude that a college student would not possess substance of that value for his own personal use (but only, by implication, for distribution to others).[4]
Upon examination of the record, however, these detectives stated that such was the value of cocaine diluted to street use, but nowhere in the record is there any evidence that the 7/10th ounce of substance found with only a minute 1% trace of cocaine in it was even near to the percentage of cocaine found in street sales of substances containing it.[5] Thus, the substance found is not shown to be "street" cocaine.
The evidence of the value of "street" cocaine, therefore, is not relevant to altering our conclusion that the present possession is consistent with possession for personal use or for mixture of lactose with cocaine for personal use, rather than that the possession of the substance was any evidence of possession of cocaine with intent to distribute it.
Under the evidence before the trier of fact, we therefore conclude that there was no evidence by which it might reasonably infer that the cocaine was possessed with intent to distribute it. It was much adulterated in quality, far more consistent with a cocaine-tainted lactose mixture possessed for personal uses; likewise, the quantity of this much adulterated mixture was consistent with possession for this purpose rather than with possession for distribution.
As we similarly held with regard to possession of fifteen marijuana cigarettes in State v. Willis, 325 So.2d 227 (La.1975), the present quantity of actual cocaine is too small to support an inference that the substance was intended for distribution. In similarly reversing a jury conviction for possession with intent to distribute twentyone marijuana cigarettes, we noted in State v. House, 325 So.2d 222, 225 that, aside from possession itself
"* * * the State offered no evidence: (1) that the defendant ever distributed or attempted to distribute any marijuana [cocaine], (2) that the marijuana [cocaine] was in a form usually associated with marijuana [cocaine] possessed for distribution to others; (3) that the amount was such as to create a presumption of intent to distribute; (4) of expert or other testimony that such an amount as found on the defendant is inconsistent with personal use only; and (5) of any paraphernalia . . . evidencing an intent to distribute."
Mere possession is not "some evidence" of possession with intent to distribute. While proof of intent may rest on permissible inferences from the circumstances of the transaction, mere conjecture and speculation unsupported by any such reasonable inference cannot satisfy the burden of the state to prove guilt beyond a reasonable doubt. State v. House, cited above. To meet its burden of proving possession with intent to distribute, the state must affirmatively show that the amount or circumstances of the possession are inconsistent with a possession for personal use.
We therefore conclude, as in House and Willis, that there is no evidence from which *717 the jury might legitimately conclude that possession alone of the much diluted cocaine mixture, was accompanied by the intent to distribute, an essential element of the crime for which the accused was convicted. We must therefore reverse.

(4)
We have thus determined that the conviction should be reversed because there is a total lack of evidence to prove that the accused possessed the cocaine with the requisite intent to distribute it.
Under these circumstances, our earlier jurisprudence required that, upon this finding upon appeal, an accused be discharged from further prosecution. See State v. Daniels, 236 La. 998, 109 So.2d 896 (1959). However, in State v. Gatlin, 241 La. 321, 129 So.2d 4 (1961), we overruled this earlier jurisprudence, and we held that an accused was entitled only to what was requested by his motion thus sustained an appeal, i. e., a new trial.
Therefore, the issue of whether a re-trial on the possession-with-intent-to-distribute charge will offend double-jeopardy protections is not before us. It will be presented if, on the remand, the state attempts to re-try the accused upon the present charge rather than for simple possession.

(5)
Of the remaining issues of the present appeal, only the attack on the search warrant may be viable, should there be a re-trial. These Assignments 1, 2, and 4 were perfected with regard to the trial court's denial of a motion to suppress the cocaine as illegally seized.
Despite the attempt to argue to the contrary, the essential basis for these assignments is the alleged facial insufficiency of the affidavit upon which the search warrant was based.
We do not find merit to the contentions raised. The affidavit recites that a confidential informant had personally observed a quantity of cocaine in the accused's apartment, and that the informant had provided information in the past which had been verified and had led to narcotics arrests. The credibility of the informant and the reliability of the information is thus adequately established for purposes of the sufficiency of the affidavit upon which the search warrant was obtained. See State v. Paciera, 290 So.2d 681 (La.1974).

Decree
For the reasons set forth, we reverse the conviction and sentence, and we remand this case for further proceedings in accordance with law.
REVERSED AND REMANDED.
SANDERS, C. J., and SUMMERS, J., dissent.
MARCUS, J., concurs and assigns reasons.
MARCUS, Justice (concurring).
I concur. The quantity and percentage of cocaine in the powdered substance found in defendant's possession was too small to support an inference that the substance was intended for distribution. Proof of possession of 7/10th ounce of a mixture of only 1% cocaine, without more, does not constitute some evidence of intent to distribute, which is an essential element of the crime charged.
NOTES
[1] Upon conviction for possession with intent to distribute, a defendant may be sentenced to imprisonment (which must be at hard labor) for not more than thirty years and may be fined. La.R.S. 40:967 B(1) (1973). On the other hand, a person convicted merely for possession is subject to imprisonment, with or without hard labor, for not more than five years, and to a smaller fine. La.R.S. 40:967 C (1973).
[2] See La.R.S. 14:11: "Criminal intent; how expressed

"The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes consist merely of criminal negligence that produces criminal consequences. However, in the absence of qualifying provisions, the terms `intent' and `intentional' have reference to `general criminal intent.'" (Italics ours.)
See also Official Reporter's Comment, which notes that the addition of the qualifying phrase "with intent to" denotes the specific intent required to commit the crime defined.
[3] A gram is a metric weight measure equal to .035 ounce. 18.7 grams equals.655 of an ounce.
[4] We pretermit whether, absent an affirmative showing by the state that a habitual user would not possess such a quantity, the mere monetary value of an amount of an expensive drug like cocaine would be "some evidence" permitting a jury to draw the conjectural inference that the cocaine was possessed, not for personal use but with intent to distribute.
[5] An authoritative work states that, after importation, cocaine "is diluted or `cut' so that one ounce of pure cocaine produces 16 ounces of `street' cocaine." Brecher, Licit and Illicit Drugs, p. 303 (Consumer's Union Report, Little, Brown & Co., 1972). If this is correct, "street" cocaine would normally contain a little more than 6% cocaine.