672 So.2d 1141 (1996)
CARVER, INC. d/b/a Chelsea Street Pub and Grill
v.
STATE of Louisiana, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, OFFICE OF STATE POLICE, VIDEO GAMING DIVISION.
No. 95 CA 1664.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
Rehearing Denied May 16, 1996.
*1142 Frank Blackburn, Baton Rouge, for Plaintiff-Appellant Carver, Inc., d/b/a Chelsea Street Pub and Grill.
Tammy L. Pruet and Brett Sulzer Baton Rouge, for Defendant-Appellee State of Louisiana.
Before LOTTINGER, C.J., and GONZALES and FITZSIMMONS, JJ.
LOTTINGER, Chief Judge.
Plaintiff appeals the revocation of his electronic video gaming license.

FACTS
This matter arose subsequent to the issuance of a citation by the Video Gaming Division of the Office of State Police to Mr. Greg Carver, vice president and general manager of Carver, Inc., d/b/a Chelsea Street Pub & Grill, on January 11, 1994. The Video Gaming Division proposed to revoke Chelsea's video gaming license for allowing a minor to play or operate a video poker device and for failure to provide a manager or designated employee to prevent access to the gaming area by minors. La.R.S. 33:4862.19(A); LAC 42:XI:2417(A)(5); LAC 42:XI:2415(C)(1)(b)(iii).[1]
*1143 An administrative hearing was held on October 26, 1994, to review the proposed revocation of Chelsea's license. Carver raised several constitutional issues prior to testimony at the hearing. Upon finding no precedent to support an administrative review of the constitutionality of a state statute or an agency rule, the hearing officer concluded that she must presume the constitutionality of the laws and regulations of the agency. The hearing officer then found that a young child was allowed to play or operate a video gaming device in violation of La.R.S. 33:4862.19(A). The hearing officer further noted that the statute makes no exception for children under the age of discernment and includes all minors regardless of their cognitive abilities. The hearing officer affirmed the proposed revocation of Chelsea's video gaming license in accordance with La.R.S. 33:4862.19(B).
Carver sought judicial review in the Nineteenth Judicial District Court. The district judge concluded that the hearing officer's findings of fact were reasonable and that revocation of the license was not harsh as La.R.S. 33:4862.19(B) mandates revocation of the license when a violation of Subsection A occurs.
Carver now appeals, raising four issues for review:
1) Whether the statute and rules are vague and ambiguous, thus fatally flawed and unconstitutional.
2) Whether the statute and rules violate the equal protection clause.
3) Whether revocation of Chelsea's license is too harsh a penalty under the circumstances.
4) Whether the hearing officer's decision was contrary to the law and evidence and thus erroneous in its findings and conclusions.

ISSUES ONE AND TWO
In brief, Carver sets forth two constitutional arguments. First, he argues that the statute and rules which he is alleged to have violated are unconstitutional because their language is vague and ambiguous. Second he alleges that the statute and rules violate the equal protection clause because there are no corresponding penalty provisions in other gaming regulations.
In light of the absence in the record of a pleading in the trial court specifically contesting the constitutionality of the statute or rules, and considering Vallo v. Gayle Oil Company, Inc., 94-1238 (La. 11/30/94), 646 So.2d 859, as reaffirmed in Williams v. State of Louisiana, Department of Health and Hospitals, 95-0713 (La. 1/26/96), 671 So.2d 899 the constitutional issues are not properly before this court.

ISSUE THREE
Carver also contends that revocation of his license is too harsh a penalty when La.R.S. 33:4862.8(B) gives the video gaming division the latitude to impose fines rather than suspending or revoking a license.
La.R.S. 33:4862.8 sets forth the general powers and duties of the Video Gaming Division. Subsection B provides in part, "[i]n lieu of suspending or revoking a license issued pursuant to the provisions of this Part, the division may levy a fine not to exceed one thousand dollars per violation against any licensee." While this provision provides the division with the authority to impose sanctions for violations of the video gaming laws or regulations, La.R.S. 33:4862.19(B) provides the specific penalty which must be applied when a minor is allowed to play or operate a video poker machine.
It is a well settled tenet of Louisiana jurisprudence that in the interpretation of statutes, the more specific controls over the general. State in the Interest of A.C., 93-1125 *1144 (La. 1/27/94), 643 So.2d 719, 730; Salter v. State, Through Department of Health and Human Resources, 612 So.2d 163, 165 (La. App. 1st Cir.1992). Because La.R.S. 33:4862.19(B) is the more specific statute for the violation which forms the subject matter of this dispute, it controls over La.R.S. 33:4862.8, a general empowering provision.
The express language of La.R.S. 33:4862.19(B) provides that "[t]he division shall revoke the license of any person ... who ... [has] committed or allowed a violation of Subsection A of this Section." (Emphasis added.) There is no discretion with regard to the imposition of the penalty when a violation of this statute occurs. Thus, for these reasons, we do not find that the revocation of Chelsea's license is too harsh a penalty.

ISSUE FOUR
Next, we address Carver's contention that the hearing officer's decision was contrary to law and evidence and thus erroneous.
On review, the hearing officer's findings of fact will not be set aside unless those findings are clearly wrong or manifestly erroneous in light of the record reviewed in its entirety. Alexander v. Pellerin Marble & Granite, 93-1698 (La. 1/14/94), 630 So.2d 706, 710. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Ferrell v. Fireman's Fund Insurance, Co., 94-1252, p. 4 (La. 2/20/95), 650 So.2d 742, 745-46; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact's findings. Ferrell, 650 So.2d at 746; Rosell, 549 So.2d at 844. An appellate court may find manifest error or clear wrongness in a finding purportedly based upon a credibility determination where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story. Ferrell, 650 So.2d at 746; Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
After a thorough review of the record, we cannot say that the hearing officer's findings of fact were clearly wrong or manifestly erroneous. The testimony adduced at the hearing supports the finding that two women and a child entered the pub on January 11, 1994. They were observed by two state troopers who were having lunch. One of the women sat at a table while the other woman and the child went into the video poker gaming area. While the two were in the area, a waiter spoke to the woman but did not ask that the child be removed from the area. One of the state troopers entered the video poker area and observed the woman depositing coins into a video poker machine and instructing the child to touch the screen. After the trooper returned to his table, the manager was summoned and notified that there was a minor in the video poker area. The manager immediately asked that the child be removed. Prior to this time no employee had requested that the child leave the video poker gaming area.
While there was conflicting testimony as to whether or not the child actually entered the video poker gaming area, we find no error in the hearing officer's choice between the two permissible views. The choice, which was based on credibility determinations, must be afforded great deference. The record contains ample evidence to support the findings that the child entered the video poker gaming area and played or operated a video poker machine. We cannot say that the hearing officer's findings of fact were erroneous. This argument is without merit.
Carver also asserts that the hearing officer's decision was contrary to law because she concluded that Carver's "knowledge or intent to allow the minor to operate the gaming device [was] irrelevant."
At the time that Carver was charged with violating La.R.S. 33:4862(19)(A), Subsection A provided that:
No person licensed pursuant to the provisions of this Part, or any agent or employee thereof, shall allow a person under the age of eighteen to play or operate a video *1145 draw poker device at a licensed establishment.
La.R.S. 33:4862(19)(A).
In 1995, Subsection A was amended and it now provides that:
No person licensed pursuant to the provisions of this Part, or any agent or employee thereof, shall intentionally allow a person under the age of eighteen to play or operate a video draw poker device at a licensed establishment. (Emphasis added.)
La.R.S. 33:4862.19(A)(1). Carver asserts that by including the word "intentionally" the legislature clarified the meaning of the original statute; and that given the proper interpretation, he did not violate the provision because he did not "intentionally allow" a minor to play or operate a video poker machine.
The amended statute contains no express pronouncement with regard to the retroactive application of the term "intentionally." However, even assuming that the term applies retroactively in the present case, such retroactive application would not preclude the finding that Carver violated La.R.S. 33:4862.19(A).
Though La.R.S. 33:4862.19(A) is not a criminal statute, it is a penal provision. Therefore, in order to determine the correct interpretation to be accorded the statute subsequent to the inclusion of the term "intentionally," it is helpful to consider the law and jurisprudence that address the term "intentional" and "intentionally" in the context of criminal penal provisions. With regard to the term "intentional," La.R.S. 14:11 states that in the absence of qualifying provisions, the terms "intent" and "intentional" refer to general criminal intent. General criminal intent has been defined as an objective standard which, "exists when from the circumstances the prohibited result may reasonably be expected to flow from the offender's voluntary act, irrespective of any subjective desire on his part to have accomplished such result." City of Baton Rouge v. Ross, 94-0695, p. 12 (La. 4/28/95), 654 So.2d 1311, 1332 (Calogero, C.J., concurring.); State v. Elzie, 343 So.2d 712, 714 (La.1977); see La.R.S. 14:10(2).
In light of the jurisprudential construction of the term "intentionally," evidence of Carver's voluntary actions in failing to properly monitor the devices as required by the regulations and law, which resulted in a violation of the law, is sufficient to establish the intent necessary under La.R.S. 33:4862.19(A) as amended in 1995. For the foregoing reasons, we find no merit in this argument.
Carver further notes that the decision is contrary to law because the hearing officer stated that he violated LAC 42:XI:2415(A)(5), a regulation which was not in effect at the time of the incident in question. The referenced citation appears in the conclusion of the hearing officer's opinion. The hearing officer erroneously cited LAC 42:XI:2415(A)(5) instead of LAC 42:XI:2417(A)(5). This is merely a technical error which should not serve as a basis to reverse the decision of the hearing officer.

CONCLUSION
For the foregoing reasons, we affirm the decision of the district court affirming the hearing officer's decision to revoke Chelsea's video gaming license. Costs of this appeal are assessed against Carver.
AFFIRMED.
NOTES
[1] The three regulations which Carver was alleged to have violated were amended in 1995. At the time of the alleged violation, they contained the following provisions.

La.R.S. 33:4862.19 provided:
A. No person licensed pursuant to the provisions of this Part, or any agent or employee thereof, shall allow a person under the age of eighteen to play or operate a video draw poker device at a licensed establishment.
B. The division shall revoke the license of any person issued pursuant to the provisions of this Part, who is found by the division to have committed or allowed a violation of Subsection A of this Section.
LAC 2417(A)(5) provided:
Licensees of licensed establishments and/or device owner(s), if applicable, shall be subject to immediate revocation if minors are allowed, whether intentionally or unintentionally, to operate devices.
LAC 2415(C)(1)(b)(iii) provided:
1. Security personnel shall be required at all video gaming device facilities. Security personnel may include designated representatives, managers, or other persons employed by the establishment. This includes, for type "IV" and "V" establishments, with more than twenty devices, licensed and bonded security guards.
. . . .
b. All video gaming devices are to be located in an area which is within the sight and control of the designated representative, manager, or employee of the establishment. Such person shall:
. . . .
iii. Ensure that minors under the age of 18 are not allowed to play, access, or observe other adult patrons playing the games.