h GREMILLION, Judge.
Defendant, James C. Walker, was charged by bill of information with possession of a controlled dangerous substance, Schedule II cocaine, with the intent to distribute, in violation of La.R.S. 40:967(A)(1). He was subsequently found guilty in a trial by jury. Following his conviction, defendant was sentenced to sixty-six months at hard labor. Defendant seeks review by this court alleging one assignment of error. After reviewing the record, we find no merit in defendant’s assignment of error and affirm his conviction and sentence.
FACTS
On June 11, 1994, Eunice Police Officer Varden Guillory was patrolling in a marked patrol ear when he spotted a possible crack deal occurring between a man and two women. The officer became suspicious of the situation when he saw defendant empty the contents of a small green bottle into his hand. Shortly thereafter, Officer Guillory apprehended the defendant and, after a search of the surrounding area, found a green bottle containing seven rocks of crack cocaine.
k ASSIGNMENT OF ERROR
In his only assignment of error, defendant argues the trial court erred in finding that reasonable finders of fact could have concluded that the state carried its burden of proof in establishing that he was guilty of the charge of possession with the intent to distribute cocaine; therefore, he asserts the verdict is contrary to the law and the evidence. In his brief, defendant limits his discussion to the “intent to distribute” prong of the crime. Accordingly, we shall limit our discussion to the intent element.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness, and the appellate court should not second guess the credibility determination of the fact finder beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. La.R.S. 40:967(A) states:
A. Manufacture; distribution. Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II;
(2) To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance classified in Schedule II.
(Footnotes omitted.)
Cocaine is classified as a “Schedule II” drug in La.R.S. 40:964. Under this statute, the state must prove beyond a reasonable doubt that defendant possessed cocaine with the specific intent to distribute it. State v. Elzie, 343 So.2d 712 (La.1977); State v. Bannister, 95-172 (La.App. 5 Cir. 6/28/95); 658 So.2d 16. In that regard, see State v. Harmon, 594 So.2d 1054 (La.App. 3 Cir.), writ denied, 609 So.2d 222 (La.1992), writ denied, 623 So.2d *14 1326 (La.1993), where this court relied on the factors enunciated in State v. House, 325 So.2d 222 (La.1975), to prove intent:
The intent to distribute may be established by proving circumstances surrounding defendant’s possession which give rise to reasonable inferences of intent to distribute. (Citations omitted). Several factors from which intent to distribute may be inferred have been enumerated in Louisiana’s jurisprudence. Those factors include: (1) that defendant ever distributed or attempted to distribute narcotics; (2) that the narcotics were in a form usually associated with narcotics possessed for distribution to others; (3) that the amount was such as to create a presumption of intent to distribute; (4) of expert or other testimony that such an amount as found on the defendant is inconsistent with personal use only; and (5) of any paraphernalia, such as baggies or scales, evidencing an intent to distribute. (Citation omitted).
Id. at 1060.
Defendant asserts that the prosecution did not carry its burden of proof concerning the aforementioned House test, particularly in dealing with the narcotics expert’s testimony. Defendant relies on State v. McIntyre, 544 So.2d 86 (La.App. 3 Cir.1989), to show that when inferences from attendant circumstances rely on “mere speculation and conjecture” and are unable to satisfy the prosecution’s burden of proof, this court has reversed convictions for possession with intent to distribute controlled dangerous substances. Nevertheless, contrary to defendant’s assertions, we find that when the facts are viewed in the light most favorable to the prosecution, the state proved the specific intent element of the crime beyond a reasonable doubt.
ti Officer Guillory testified that while he was patrolling a notorious drug area of Eunice on the night of June 11, 1994, he spotted defendant engaged in a possible drug transaction with two unidentified women. The officer further testified he saw defendant emptying the contents of a green bottle into his hand while the two women looked on. The officer was able to get a good look at the transaction since the trio was standing underneath a bright street light.
After making a U-turn and returning to the scene, Officer Guillory exited his car and told defendant, “[y]ou are under arrest. Give me the bottle that is in your hand.” Guillory said defendant immediately fled the scene, flinging the green bottle from his possession. He testified he heard the bottle strike an adjacent chain fence. Guillory further testified that while he was in pursuit of defendant, he used his ear’s speaker system and told defendant that he knew his identity and advised him to surrender, whereupon defendant stopped, raised both hands, and surrendered to him.
Officer Guillory also testified that when he placed defendant in the rear of the patrol car, defendant said, “[y]ou can’t charge me if you don’t find it.” Guillory, along with other officers that had arrived, began looking for the green bottle and found it approximately six inches from an adjacent fence. Guillory’s inspection of the bottle yielded seven rocks of crack cocaine wrapped in a napkin. After placing defendant under arrest and reading him his rights, Guillory searched him and found thirty dollars in cash.
Officer Guillory’s conclusions about defendant being a dealer were corroborated by Officer Dwayne Grimmett of the Narcotics Division of the Opelousas City Police. Officer Grimmett testified as an expert without objection from defendant in the field of narcotic investigation with a particularization in crack cocaine. Grimmett stated that street level crack dealers normally conduct their business on street corners, utilizing either a small bottle, match box, or napkin to hold the drugs. ⅛ Grimmett further testified that the typical quantity of crack for a street dealer to have at one time usually ranged from two to ten rocks. Grimmett differentiated the street crack dealer from the street crack user by the following factors:
A street addict mostly carries from maybe one, maybe two rocks at a time on him. And, he,usually carries a crack pipe that he uses to smoke them. If he has the drug on him, it takes him maybe just a few minutes to get rid of it. He’ll usually buy *15 it and go into an area that no one can see him and smoke it.
Moreover, Grimmett testified that because of the expedient nature of the user’s habit, the user often carried the crack in his hand or mouth, rendering the need for any container unnecessary. Grimmett also testified that a “pure crack user” does not usually possess rocks and money at the same time because the user generally buys a little bit at a time and quickly smokes it up.
When asked to describe the most common street dealing scenario, Officer Grimmett opined that crack is usually sold on street corners by dealers who wait for users to come to them. He stated that the average cost of a rock of crack cocaine fluctuates between ten and thirty dollars. More important to Grimmett is the fact that the dealer, unlike the user, generally has possession of money and rocks at the same time. Finally, he suggested that the dealer’s money is usually in denominations of ten; therefore, a dealer will have ten, twenty, or thirty dollars in his possession rather than an odd numbered amount. Grimmett testified that the amount of crack the defendant possessed at the time of the arrest, .5 grams, was typical for a dealer because users usually have a much smaller amount, e.g., .1 gram. When Grimmett examined the seven crack rocks which were in defendant’s possession, he deduced that their street value was between $100 to $150. Furthermore, the green medicine bottle, the napkin, the thirty dollars seized, and the lack of any related drug paraphernalia on the defendant were indicative of dealer status to Grimmett. After considering all of the evidence, Grimmett was of the opinion that defendant was a crack cocaine dealer, not a drug user.
Defendant argues that Officer Grimmett’s testimony was self-serving and tailored to fit the facts of the instant case in an effort to create the illusion that defendant is a crack cocaine dealer. However, the testimony of defendant’s first witness, Sergeant Ronnie Valenta of the Eunice Police Department, actually bolstered the prosecution’s case. Valenta, the head of the narcotics division in Eunice for the last six years, testified he had previously arrested defendant two years ear-her for distribution of crack cocaine; however, their relationship began six months prior to that arrest when defendant began calling Valenta to offer information on drugs. Va-lenta said that defendant had offered information on drug cases, but he never assisted the department in making any drug buys. Valenta also offered that the crack users he had arrested very seldom had drugs on them, but they all had drug paraphernalia. Finally, Valenta stated that he had not heard from defendant in almost two years.
Defendant’s rebanee on McIntyre, 544 So.2d 86, is misplaced as it may be distinguished from the instant case, most particularly when the “totality of the circumstances” test is utilized. In McIntyre, the court did a complete review of the facts of the case and decided that the “totality of the circumstances” test did not warrant a conviction for possession with intent to distribute. Defendant hinges his case on the fact that in McIntyre the defendant possessed 7.75 grams of cocaine and the court did not consider that amount sufficient to establish the specific intent to distribute. However, the McIntyre court did not base its decision on the amount of drugs the defendant harbored. Rather, it was all the attendant factors reviewed in the aggregate which caused the court to reverse the conviction.
Application of the “totality of the circumstances” test to the instant case is achieved through a House analysis. Defendant as well as Valenta testified regarding defendant’s previous distribution charge. Both defendant and Valenta linked defendant \¡ to the local drug culture. The form of the cocaine, crack cocaine, divided into seven individual rocks, and wrapped in a napkin in a green bottle, was consistent with drug distribution. Defendant was seen in an infamous drug trafficking area displaying the contents of the green bottle to two other individuals shortly before he was arrested. The amount and number of crack rocks were indicative of dealer status. Finally, the various dealer paraphernalia defendant had (the small green container, the denomination of money, the napkin, etc.) as weh as his lack of user paraphernalia all point to an intent to distribute. Therefore, in light of the aforemen *16 tioned facts, we find the prosecution satisfied its burden of proving defendant intended to distribute cocaine.
In essence, the crux of this case lies in the credibility of the witnesses. The question of credibility is within the sound discretion of the triers of fact. Their factual determinations are entitled to great weight and will not be disturbed unless contrary to the evidence. State v. Johnson, 580 So.2d 998 (La.App. 3 Cir.1991). The jury may accept or reject, in whole or in part, the testimony of each witness. State v. Jeansonne, 580 So.2d 1010 (La.App. 3 Cir.1991). The duty of the jury, in considering the evidence and in applying that evidence to the law as given by the trial court, is to give the defendant the benefit of every reasonable doubt arising out of the evidence, or out of the lack of evidence in the case. If not convinced of the defendant’s guilt beyond a reasonable doubt, the jury should find the defendant not guilty. The jury is the exclusive judge of the facts.
We find that the jury had sufficient evidence before it to determine that defendant was guilty of possession with intent to distribute cocaine. Therefore, this assignment of error lacks merit.
ERRORS PATENT
La.Code Crim.P. art. 920 provides the scope of review on appeal, as follows:
h The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence.
In accordance with this article, all appeals are reviewed for errors patent on the face of the record. A review of the record reveals one error patent.
Although defendant was not charged with attempted possession with the intent to distribute cocaine, the bill of information cited an attempt statute, La.R.S. 40:979. La.Code Crim.P. art. 464 provides:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
We have held that if a bill of information states the essential facts of the offense charged, the defendant does not object to any error in the bill of information, and the defendant does not claim surprise or prejudice, any error in the bill of information is harmless. State v. Morris, 614 So.2d 180 (La.App. 3 Cir.1993). The bill of information in the present case states the essential facts of the offense charged: that defendant, on or about the 11th day of June, 1994, “did unlawfully, knowingly, and intentionally possess with the intent to distribute a controlled dangerous substance, to-wit: Cocaine, classified as a controlled dangerous substance in Schedule II of R.S. 40:964(4) ...” Furthermore, defendant has not claimed surprise or prejudice. The prosecution defined possession with the intent to distribute as the crime for which defendant was on trial. In his opening statement, defense counsel also cited possession with the intent to distribute cocaine as the offense for which defendant was charged. Additionally, defendant did not object to the trial court’s instructions defining the ⅛ offense charged as possession with intent to distribute and citing attempted possession with intent to distribute as a responsive verdict. Therefore, even though this is an error which is discoverable by a mere inspection of the pleadings, it is a harmless error.
CONCLUSION
For the foregoing reasons, the conviction of the defendant, James C. Walker, for possession of a controlled dangerous substance, cocaine, is upheld and his sentence is affirmed.
AFFIRMED.