JjDREW, J.
In this tort action, plaintiffs Carver, Inc., d/b/a Chelsea Street Pub and Greg Carver appeal from the grant of an exception of no cause of action in favor of defendants. For the following reasons, we affirm.

FACTS

The Chelsea Street Pub is a restaurant in the Pecanland Mall in Ouachita Parish. In 1994, the restaurant contained a separate section providing video poker gaming *318 for its patrons. According to the petition, the gaming area was conspicuously marked with signs prohibiting minors from entering the video poker room.
Plaintiffs allege that on January 11, 1994, defendants Sandi and Toni Dixon, along with a four-year-old child named Candace, entered the restaurant and sat down at a table. Plaintiffs do not allege that Candace was the child of either defendant but do allege that the child was under the custody and control of the Dixons. Thereafter, Toni Dixon entered the. gaming area and began playing a video poker machine. Candace soon entered the gaming area. While Candace sat in her lap, Toni Dixon allegedly “instructed Candace to touch a certain area of the video poker machine.” An undercover state police officer witnessed this conduct, and, as a result, the State of Louisiana revoked the plaintiffs’ gaming license effective October 8, 1996. See Cerner, Inc. v. State of Louisiana, Dept. of Public Safety and Corrections, 95-1664 (La.App. 1st Cir.4/4/96), 672 So.2d 1141, writ denied, 96-1528 (La.9/27/96), 679 So.2d 1349. Plaintiffs further allege that the revocation of this license “affected” Mr. Carver’s gaming licenses at other locations.
On March 14, 1997, plaintiffs filed suit against both of the Dixons, alleging that the defendants’ negligent conduct in allowing Candace to enter the video poker area and instructing her to touch the gaming machine caused the plaintiffs to lose their gaming license and the substantial revenue generated thereby. ^Plaintiffs subsequently amended their petition to add Louisiana Farm Bureau Casualty Insurance Company (Farm Bureau), the Dixons’ homeowners insurer, as a defendant. In April 1998, defendants filed the peremptory exception of no cause of action. Defendants asserted that the duty to prevent minors from entering the gaming area and operating the gaming machines belonged entirely to the plaintiffs and could not be transferred. On November 5, 1998, the court conducted a hearing on the exception, and on June 30, 1999, the court signed a judgment .granting the exception of no cause of action and dismissing the plaintiffs’ case. From that judgment, plaintiffs now appeal.

DISCUSSION

The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 94-2015 (La.11/30/94), 646 So.2d 885. The exception is tried on the face of the pleadings and the court accepts the facts alleged in, the petition as true, determining whether the law affords relief to the plaintiff if those facts are proved at trial. Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007 (La.1993). Our review of a trial court’s ruling sustaining an exception of no cause of action is de novo because the exception raises a question of law and the lower court’s decision is based only on the sufficiency of the petition. Kelly v. CNA Ins. Co., 98-0454 (La.3/12/99), 729 So.2d 1033. Any doubt as to the sufficiency of the petition must be resolved in favor of the plaintiff. McDonald v. City of Bastrop, 31,238 (La.App. 2d Cir.lO/28/98), 720 So.2d 1256.
In- order to recover under the duty-risk analysis, the plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, the defen-" dant owed a duty of care to the plaintiff, the requisite duty was breached by [3the defendant and the risk of harm was within the scope of protection afforded by the duty breached. Berry v. State Through Dept. of Health and Human Resources, 93-2748 (La.5/23/94), 637 So.2d 412. The legal question presented by this exception is whether the defendants owed a duty to plaintiffs to refrain from bringing a child into a gaming area and instructing the child to operate the gaming machines. This question is res nova.
*319 In the recent case of Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/80/99), 752 So.2d 762, the supreme court addressed the method to determine whether a duty is owed:
A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Meany v. Meany, 94-0251, p. 6 (La.7/5/94), 639 So.2d 229, 233. Whether a duty is owed is a question of law. Peterson v. Gibraltar Savings & Loan, 98-1601, 98-1609, p. 7 (La.5/18/99), 733 So.2d 1198, 1204; Mundy v. Dep’t of Health & Human Resources, 620 So.2d 811, 813 (La.1993); Faucheaux v. Terrebonne Consol. Gov’t, 615 So.2d 289, 292 (La.1993). In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. See Socorro v. City of New Orleans, 579 So.2d 931, 938 (La.1991). The court may consider various moral, social, and economic factors, including the fairness of imposing liability; the economic impact on the defendant and on similarly situated parties; the need for an incentive to prevent future harm; the nature of defendant’s activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving. See Meany, 639 So.2d at 233; Pitre v. Opelousas Gen. Hosp., 530 So.2d 1151, 1161 (La.1988); Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983).
Video poker gaming is a relatively recent addition to the menu of Louisiana gaming options. See Polk v. Edivards, 626 So.2d 1128 (La.1993), for a history of the modern gaming statutes. Video poker gaming is regulated to the strictest standard by the Video Draw Poker Devices Control Law (VDPDCL), now designated as La. R.S. 27:301-324, and through administrative rules promulgated thereunder by the video gaming division of the gaming enforcement section of the |4Office of State Police within the Department of Public Safety and Corrections (DPS).
At the time of the events cited in the petition, the VDPDCL provided in La. R.S. 33:4862.19 the following rule relating to minors and video poker machines:
A. No person licensed pursuant to the provisions of this Part, or any agent or employee thereof, shall allow a person under the age of eighteen to play or operate a video draw poker device at a licensed establishment.
B. The division shall revoke the license of any person issued pursuant to the provisions of this Part, who is found by the division to have committed or allowed a violation of Subsection A of this Section.
The language of this statute is notably directed toward the conduct of the licensee and not to the conduct of any other person. The legislature specified that the licensee, and its agents and employees, were forbidden to allow persons under 18 years of age to operate a video poker machine.
The administrative rules in effect at the time of these events were even more explicit regarding the conduct of the licensee. LAC 42:XI:2417(A)(5) provided:
Licensees of licensed establishments and/or device owner(s), if applicable, shall be subject to immediate revocation if minors are allowed, whether intentionally or unintentionally, to operate devices.
LAC 42:XI:2415(C)(l)(b)(iii) provided:
1. Security personnel shall be required at all video gaming device facilities. Security personnel may include designated representatives, managers, or other persons employed by the establishment. This includes, for type “IV” and ‘V” establishments, with more than twenty devices, licensed and bonded security guards.
[[Image here]]
b. All video gaming devices are to be located in an area which is within the sight and control of the designated rep *320 resentative, manager, or employee of the establishment. Such person shall:
[[Image here]]
| fiiii. Ensure that minors under the age of 18 are not allowed to play, access, or observe other adult patrons playing the games.
The rules contemplate that security personnel will be present wherever video poker machines are operated and that a single person — the designated representative of the licensee — is responsible to prevent minors from playing, accessing or even observing adult patrons playing the machines. Thus, the onus of keeping minors from the video poker machines lies squarely with the licensee. With such strict measures required by the regulations, we believe it entirely fair that the licensee should bear all of the civil consequences for the failure to keep minors away from the machines. The economic impact of preventing the harm is already allocated to the licensee through the requirements of security personnel and the designation of a representative to monitor the gaming area, so no additional burden is imposed upon the licensee by this allocation of the risk of loss of his license for violation of the law. The nature of video poker gaming, conducted on a segregated part of the licensee’s premises ostensibly under the supervision of the licensee, likewise supports the allocation of the civil consequences of losing the video poker license to the licensee.
Moreover, we believe that the legislature contemplated that the risk of loss of a gaming license should be borne entirely by the licensee. That penalty is exactly what is prescribed for the failure of the licensee to keep minors away from the machines. La. R.S. 33:4862.19; see now La. R.S. 27:319. The economic benefit to the licensee of operating the machines is the principal incentive for the licensee to prevent minors from gambling.
The legislature has made video poker playing unlawful for persons under the age of 21, signifying that the social impact of gaming on minors is not insignificant. La. R.S. 14:90.4; see also La. R.S. 27:319(C). However, the economic impact of gaming by minors lies squarely with the licensee. The | (¡licensee stands to gain financially by allowing minors to operate the machines, and the legislature has recognized this by requiring the licensee to remit any such profits to the DPS. La. R.S. 27:319(A) provides, in part:
(2) The person licensed pursuant to provisions of this Chapter shall withhold all winnings from patrons who are determined to be under the age of twenty-one.
(3) The person licensed pursuant to provisions of this Chapter shall each quarter report and remit to the division all winnings withheld from patrons who are determined to be under the age of twenty-one.
Because the economic benefit of allowing minors to operate the video poker machines lies with the licensee unless the licensee complies with the law, the economic risk of allowing the violation of the law should also lie with the licensee.
For all of these reasons, we believe that the trial court correctly decided that the plaintiffs have no cause of action against the defendants for the conduct alleged in the petition. The decision of the trial court is affirmed at appellants’ cost.

DECREE

At appellants’ cost, the judgment is AFFIRMED.